433 So.2d 750 (1983)
AMERICAN BANK OF WELCH, Plaintiff-Appellant,
v.
SMITH AVIATION, INC., et al., Defendants-Appellees.
No. 82-625.
Court of Appeal of Louisiana, Third Circuit.
March 9, 1983.
*751 Stewart M. Thomas, Jennings, for plaintiff-appellant.
Levingston, Tynes & Liles, Henry R. Liles, Lake Charles, for defendants-appellees.
Before FORET, CUTRER and KNOLL, JJ.
FORET, Judge.
American Bank of Welch (plaintiff) brought this action to recover the sum of $32,701.74, the amount of a certain check that was deposited by one of plaintiff's customers into its account with plaintiff. Plaintiff has been unable to collect the amount of the check, as the account on which it was drawn contains insufficient funds for the payment thereof.
Named defendants are: Smith Aviation, Inc. (the Corporation), owner of the account on which the check was drawn; and, Wayne Paul Smith, a stockholder in and employee of the corporation, and his wife, Dorothy Smith, another employee of the corporation.
The trial court, after trial on the merits, rendered judgment in favor of plaintiff and against the corporation, awarding it the principal sum of $32,701.74, together with legal interest thereon from date of judicial demand until paid. The trial court then rendered judgment in favor of the corporation, denying plaintiff's demand for attorney's fees. Finally, the trial court rendered judgment in favor of Mr. and Mrs. Smith (the Smiths), denying plaintiff's demands against them.
Plaintiff appeals from that judgment and raises the following issues:
(1) Whether the trial court committed manifest error in finding that the Smiths' relationship with the corporation was such that it was treated by them as a separate and distinct entity, entitling them to escape personal liability for its debts; and
(2) Whether the trial court erred in refusing to allow plaintiff reasonable attorney's fees incurred by it in its attempt to collect payment on the check.

FACTS
Dorothy Smith, in her capacity as Business Manager of the Corporation, made a check payable to Riverside Chemical Company (Riverside) on August 16, 1980, in the amount of $32,701.74. The check was sent to Riverside as payment for certain chemicals purchased by the corporation for use in its crop dusting business. Subsequently, Riverside deposited the check in its account with plaintiff. Plaintiff credited Riverside's account for the amount of the check and then sent it through normal banking channels for payment. However, during this process, the original check was lost and has never been found.
The account on which the check was drawn was maintained by the corporation in the Calcasieu Marine National Bank of Lake Charles (Calcasieu Bank). In February of 1981, plaintiff attempted to negotiate a photostatic copy of the check through the Calcasieu Bank. At that time, the account on which it was drawn contained insufficient funds for its payment, and the Calcasieu Bank refused payment on the *752 check. Plaintiff then instituted this action to recover the amount of the check.

PIERCING THE CORPORATE VEIL
The general rule that corporations are distinct legal entities, separate and distinct from the individuals who compose them, is statutory in origin, and well recognized in the Louisiana jurisprudence. LSA-C.C. Article 435; Kingsman Enterprises, Inc. v. Bakerfield Electric Company, Inc., 339 So.2d 1280 (La.App. 1 Cir.1976); Buckeye Cotton Oil Company v. Amrhein, 168 La. 139, 121 So. 602 (La.1929); Texas Industries, Inc. v. Dupuy & Dupuy Developers, Inc., 227 So.2d 265 (La.App. 2 Cir.1969); Johnson v. Kinchen, 160 So.2d 296 (La.App. 1 Cir.1964). Thus, shareholders are not individually responsible for the debts due by the corporation. LSA-C.C. Article 437; LSA-R.S. 12:93(B); Kingsman Enterprises, Inc. v. Bakerfield Electric Company, Inc., supra; Texas Industries, Inc. v. Dupuy & Dupuy Developers, Inc., supra.
There are, however, limited exceptions to the rule of non-liability of shareholders for the debts of a corporation whereby the court may ignore the corporate fiction and hold the individual member or members liable. In such situations, courts commonly refer to the corporation as the "alter ego" of the shareholder. One such exception to the non-liability rule involves situations where fraud or deceit has been practiced on a third party by the shareholder acting through the corporation. LSA-R.S. 12:95; Kingsman Enterprises, Inc. v. Bakerfield Electric Company, Inc., supra; Bossier Millwork & Supply Company v. D. & R. Construction Company, 245 So.2d 414 (La.App. 2 Cir.1971).
Another basis for disregarding the corporate entity involves the failure to conduct a business on corporate footing, thereby disregarding the corporate entity to such an extent that the corporation ceases to be distinguishable from its shareholders. Kingsman Enterprises, Inc. v. Bakerfield Electric Company, Inc., supra; Gordon v. Baton Rouge Stores Company, 168 La. 248, 121 So. 759 (La.1929); Brown v. Benton Creosoting Company, 147 So.2d 89 (La.App. 2 Cir.1962), writ denied, (La.1963). In Louisiana, courts usually base their rule upon the often-quoted language of Keller v. Haas, 202 La. 486, 12 So.2d 238 (La. 1943), which is found on page 240:
"It is well settled that where an individual forms a corporation of which he is the sole and only stockholder or owns such control of the stock that the act of the corporation is his own, then he may not use the screen of corporate entity to absolve himself from responsibility."
However, the broad language quoted gives little indication as to what circumstances justify piercing a corporate veil absent fraud on the part of the shareholder. Some factors to consider may include but are not limited to: comingling of corporate and shareholder funds; failure to follow statutory formalities for incorporation and the transaction of corporate affairs; under-capitalization; failure to provide separate bank accounts and bookkeeping records; and, failure to hold regular shareholder or directors meetings. Kingsman Enterprises, Inc. v. Bakerfield Electric Company, Inc., supra; Smith-Hearron v. Frazier, Inc., 352 So.2d 263 (La.App. 2 Cir.1977), writ denied, 353 So.2d 1337 (La.1978).
Finally, regardless of the basis for piercing the corporate veil, it is clear that the situation must be viewed with regard to the totality of circumstances in each case. It should be kept in mind that in Louisiana the concept of the separation of the corporate entity from its shareholders is the general rule and is firmly established. Because of the beneficial role of the corporate concept, this principle should be disregarded only in exceptional circumstances. Kingsman Enterprises, Inc. v. Bakerfield Electric Company, Inc., supra; Johnson v. Kinchen, supra. When fraud or deceit is absent, other circumstances must be so strong as to clearly indicate that the corporation and shareholder operated as one. Kingsman Enterprises, Inc. v. Bakerfield Electric Company, Inc., supra.
Plaintiff contends that the trial court should have held the Smiths liable, in solido, *753 with the corporation for the amount of the check. It argues that the trial court committed manifest error in finding that the Smiths had engaged in none of the actions necessary to permit application of the doctrine of piercing the corporate veil. In its brief filed in this Court, plaintiff admits that all applicable statutes were complied with by the incorporators in forming the corporation.
However, plaintiff alleges that Smith Aviation, Inc. is a small, closely-held corporation, and that the Smiths have complete control over the day-to-day affairs of the corporation. Mr. Smith testified that, in addition to being a pilot employed by the corporation, he was also a stockholder in the corporation and a member of its Board of Directors. He stated that he was in charge of the corporation's day-to-day business affairs. The only other stockholder in the corporation is J.W. Bertrand, Jr. Mr. Smith testified that 3,360 shares of the corporation's stock had been issued to Bertrand and 1,080 shares had been issued to him and that each had paid $50 per share for the stock. He further testified that Bertrand was elected President of the Corporation, and that he (Smith) was elected Secretary-Treasurer.
Bertrand and Mr. Smith are the only members of the Board of Directors of the Corporation. Defendants introduced in evidence a resolution adopted by the Board of Directors, which reads, in pertinent part:
"BE IT FURTHER RESOLVED, that Wayne P. Smith, Secretary-Treasurer, be and he is hereby authorized, for and on behalf of said corporation, to carry on all matters of business of said corporation, to sign all documents, instruments and papers necessitated hereby and to do any and all things necessary or proper in the premises, with full power to bind the Board of Directors of this corporation firmly in all acts authorized by the said resolution; ..."
Bertrand testified that Mr. Smith did have authority to conduct the daily business affairs of the corporation in the manner he thought best. Thus, there can be no doubt that Mr. Smith was duly authorized to run the corporation.
However, plaintiff argues that the Smiths knowingly undertook a course of conduct consciously designed to keep the check from being paid, and that they had directly benefited from this course of conduct. In support of its argument, plaintiff points to the evidence showing that interest-free loans were made to the Smiths by the corporation at certain times, and that no promissory notes, etc., were signed by the Smiths to evidence these debts. Plaintiff alleges that these loans were made to the Smiths without them obtaining authorization to do so.
Mr. Smith testified that it was common practice among crop dusting companies to loan money to their pilots as advances against the earnings they would make during the peak flying season of May, June and July. He further testified that the corporation made such loans to its other pilots and that these loans were usually made early in the year. Mr. Smith stated that he had the authority to make such loans, and Bertrand testified that he knew that they were being made.
We find that Mr. Smith had been given authority by the Corporation's Board of Directors to make the loans complained of by plaintiff, and that such a practice was common among corporations engaged in the crop dusting business.
Plaintiff then notes that between March and May of 1981, Mrs. Smith wrote a series of checks on the Chemical Account to the corporation's other two accounts, which it also maintained at the Calcasieu Bank. These other two accounts were termed the "General Account" and the "Payroll Account". The check in question was drawn on the Chemical Account. The evidence shows that there were sufficient funds in this account to pay the check from the time it was sent to Riverside until February 16, 1981, approximately five and one-half months later. Since that date, there have never been sufficient funds in the Chemical Account to pay the check. In addition to the above mentioned loans and *754 transfers of funds between the corporation's different accounts, plaintiff also notes that a check drawn on the Chemical Account was made out to the Smiths' son, Shawn, in the amount of $1,000.
The evidence shows that the Smiths have repaid the loans made to them by the corporation. However, the repayments were made to the corporation's other two accounts, rather than the Chemical Account. The evidence further shows that the $1,000 check made out to Shawn was payment for wages due him from the corporation. The Smiths have made no attempt to conceal the fact that their actions were designed to keep the amount of funds in the Chemical Account below that needed to pay the check. Mrs. Smith admitted that she had been instructed by Mr. Smith to do this. However, the Smiths explained their actions by stating that the financial condition of the corporation had progressively deteriorated during the five and a-half months preceding the date on which they were notified that the check had not been paid. They testified that they felt that the corporation's employees' wages, and its current debt obligations, should be paid before the check. They never denied that the amount of the check was due plaintiff, and stated that they intended to pay it once the corporation's financial position strengthened.
Mr. Smith testified that, until he was contacted by the Calcasieu Bank regarding the check, he was under the impression that it had been paid. He thought that the bank statements he received accurately reflected the amount of funds that the corporation had to pay the debts. Mr. Smith noted that, between the time the check was sent to Riverside and the date on which he was notified that the check had not been paid, he went to Oklahoma and purchased an aircraft engine for $8,200, which he paid for with corporate funds. He stated that he never would have done this had he known that the check sent to Riverside had not been paid.
Finally, as to plaintiff's allegation that the Smiths comingled their own personal funds with corporate funds, there is no evidence to support the allegation. Anthony LeBato, a certified public accountant, testified that he had performed accounting functions for the corporation for four years prior to the date of the trial on the merits. He also completed the Smiths' personal tax returns for 1981. He stated that the Smiths' personal financial records, etc., were kept completely separate and apart from those of the corporation. LeBato testified that the corporation maintained three separate accounts mainly as a means of internal control of the flow of funds through it. Other than that, there was no special reason for maintaining the separate accounts.
Plaintiff points to testimony given by Mrs. Smith to the effect that there had been a comingling of funds on a couple of occasions. However, a complete review of the transcript of her testimony convinces us that Mrs. Smith was simply referring to the fact that Mr. Smith had loaned money to the corporation, as well as having received loans from it. Mr. Smith testified that he had never deposited any of his personal funds in any of the corporation's account, nor has he ever paid any of his personal debts with funds deposited in its accounts. Further, the corporation has never deposited any of its funds into any of his personal accounts, nor have any corporate debts been paid with funds deposited in his accounts.
"Fraud", as defined by Webster's Seventh New Collegiate Dictionary, is: "Deceit, trickery, intentional perversion of truth in order to induce another to part with something of value or to surrender a legal right."
LSA-C.C. Article 1848 provides:
"Art. 1848. Necessity of proving fraud
Art. 1848. Fraud, like every other allegation, must be proved by him who alleges it, but it may be proved by simple presumptions or by legal presumptions, as well as by other evidence. The maxim that fraud is not to be presumed, means no more than that it is not to be imputed without legal evidence."
The trial court found no evidence to indicate that the Smiths had committed fraud *755 by the actions they took once they learned that the check to Riverside had not been paid. We agree with this finding. In fact, it is readily apparent to us that the actions undertaken by the Smiths were designed to protect the corporation and its employees, rather than to benefit themselves[1]. They had nothing whatsoever to do with the loss of the check in the banking system. In the absence of fraud on the part of the Smiths, plaintiff had a heavy burden of proving that they disregarded the corporate entity to such an extent that it ceased to be distinguishable from themselves. Plaintiff has failed to do this.
It is our opinion that the trial court's finding, that the Smiths had engaged in none of the actions necessary to permit the application of the doctrine of piercing the corporate veil, is correct. Thus, we agree with the trial court's finding that no personal liability for the corporation's debts may be imposed upon the Smiths.
ATTORNEY FEES
LSA-R.S. 9:2782 provides:
"§ 2782. Nonsufficient fund checks; attorney fees
Whenever any drawer of a check dishonored for nonsufficient funds fails to pay the obligation created by the check within thirty days after receipt of written demand for payment thereof, the drawer may be liable for reasonable attorney fees for the prosecution and collection of the claim if judgment is rendered against him. The written demand for payment shall correctly state the amount owed and shall include a copy of the check for which there was nonsufficient funds. Reasonable attorney fees may be assessed by the judge and made payable to the claimant when the judgment on the claim is rendered in favor of the claimant." (Emphasis ours.)
The trial court found this statute to be a harsh remedy requiring strict compliance with its provisions to allow an award of attorney's fees. The trial court then found that plaintiff had failed to comply with the provisions of LSA-R.S. 9:2782, and refused to award it attorney's fees. We agree.
The evidence shows that no copy of the check was included in the letter containing plaintiff's written demand for payment as required by the statute. The trial court states that it was impossible for plaintiff to send a copy of the check. However, a copy of the check was introduced in evidence. Further, on April 9, 1981, the date on which plaintiff's demand letter was mailed, plaintiff was in possession of a photostatic copy of the check, having attempted to negotiate that copy at the Calcasieu Bank approximately one month earlier. Thus, it was indeed possible for plaintiff to have sent a copy of the check in its demand letter.
The trial court also noted that the letter had been sent to Mr. Smith, rather than the corporation which was the drawer of the check. The return receipt shows that the letter was received by one of Mr. Smith's minor children, Hud Smith. Mr. Smith testified that he was unable to recall receiving the letter. Based on these facts and circumstances, the trial court found that plaintiff had failed to provide notice to the corporation as required by LSA-R.S. 9:2782.
From a reading of the statute, we are of the opinion that it is permissive in nature, and gives to the trial court discretion in awarding attorney's fees in actions such as this. In the absence of a showing of an abuse of that discretion, this Court will not disturb a trial court's judgment awarding, or refusing to award, attorney's fees.
We find no abuse of the trial court's discretion in the action sub judice, as plaintiff *756 failed to comply with the provisions of the statute.

DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed.
All costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.
NOTES
[1] The basic justification for piercing the corporate veil is to prevent defrauding creditors. Liberto v. Villard, 386 So.2d 930 (La.App. 3 Cir. 1980). As noted above, there was no evidence to indicate that the Smiths were using the corporation as a tool to protect themselves from liability. Instead, they were attempting to keep the corporation viable. The evidence shows that the Smiths have invested large amounts of their own personal funds in the corporation in an effort to make their attempt successful.