461 So.2d 1063 (1984)
LONE STAR INDUSTRIES, INC.
v.
AMERICAN CHEMICAL, INC. and Jimmie M. Strickland.
No. CA-1310.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1984.
Rehearing Denied January 24, 1985.
Writ Denied March 22, 1985.
*1065 John B. Wilkinson, Wilkinson & Wilkinson, New Orleans, for plaintiff-appellant, Lone Star Industries, Inc.
Carol Lynn Doskey, Dymond, Crull & Castaing, New Orleans, for defendant-appellee, American Chemical, Inc. and Kay Strickland.
Before REDMANN, C.J., and GARRISON and WARD, JJ.
WARD, Judge.
This is an action to collect money owed for the purchase of bulk fuel oil and certain expenses of transferring the oil to the buyer. The seller, Lone Star Industries, Inc., recovered $132,785.31 from the buyer, American Chemical, Inc., in a judgment which dismissed Lone Star's action against Kay Thomas Strickland, American Chemical's sole shareholder, officer and director. American Chemical and Kay Strickland appeal the Trial Judge's denial of an exception of prescription of one year and his factual findings concerning the price and amount of fuel oil sold. Lone Star appeals, seeking reversal of the portion of the judgment in favor of Kay Strickland and the Trial Court's awarding of interest on only a part of the judgment. Alternatively, Lone Star seeks remand of the case because the Trial Judge denied its right to cross-examine Kay Strickland.
In August, 1980, Lone Star was negotiating to sell its cement plant in New Orleans. In preparation for an inspection of the plant by prospective buyers on September 16, Lone Star decided to sell some 10,000 barrels of Number 6 fuel oil which was stored on the premises as a reserve fuel supply. On Friday, September 12, 1980, Lone Star's local plant manager, Lou Jung, and his assistant, George Framnes, contracted with American Chemical's agent, Jimmie Strickland, for the sale of the fuel oil. American Chemical was not in the oil business, but was buying the fuel oil for immediate resale. The parties agreed that the sight gauge on Lone Star's tank revealed approximately 10,000 barrels of oil to be sold. The parties dispute the price they agreed upon, but the Trial Judge found that it was $13.86 per barrel. As part of the agreement, American Chemical was to deliver to Lone Star a certified check for $100,000.00 by Saturday, September 13, with the remainder of the price to be paid after the oil had been loaded on a barge and measured.
On Saturday, September 13, Jimmie Strickland delivered a $100,000.00 check dated September 12, 1980, drawn on American *1066 Chemical's account at the First National Bank of Commerce, and signed by Kay Thomas Strickland. The check was not certified. Lone Star's representative accepted the check because it could not be certified until Monday morning and by that time, the oil would have been transferred to American Chemical.
The pumping of the oil onto the barge commenced on Saturday and from the beginning, there were problems. The oil did not pump as quickly as anticipated and equipment breakdowns caused further delays. Although Lone Star contends that American Chemical had agreed to provide all equipment and pay all costs of transferring the oil, Lone Star lent its credit and furnished pumps and hoses to facilitate removal of the oil from its property. American Chemical hired E.W. Saybolt and Co., Inc. to test the fuel oil and ascertain the quantity after the barge was loaded. When the removal operation was completed early Tuesday morning, September 16, the Saybolt survey showed that 9,580.47 barrels of oil had been loaded onto the barge.
American Chemical immediately sent an invoice, dated September 16, for 9,041.50 barrels of oil at $19.50 per barrel to Bride Oil Co. to whom the oil was being re-sold. Bride Oil paid on September 17, wiring $176,309.25 to American Chemical's First National Bank of Commerce account.
On September 18, Jimmie Strickland appeared at the Lone Star plant, claiming that only 6,718.07 barrels of oil (a subtotal figure from page 1 of the Saybolt survey) had been delivered to American Chemical and that the agreed upon price had been $9.33 per barrel. Strickland demanded a refund of $37,398.69 from Lone Star. When Lone Star refused, American Chemical stopped payment on the $100,000.00 check. Jimmie Strickland then wrote a letter to Lou Jung, reiterating his claims and tendering a check for $62,678.94. Lone Star refused to accept the check. Lone Star then obtained a copy of the complete Saybolt survey verifying that 9,580.47 barrels of oil had been loaded on the barge.
After failing to collect the price of the oil and equipment costs it claimed were due, Lone Star filed suit on November 4, 1980 against American Chemical and Jimmie Strickland for $136,083.41. Lone Star later dismissed the claim against Jimmie Strickland, who had declared bankruptcy, and in August, 1982, added Kay Strickland as a defendant, alleging that she participated in the fraud so as to make her personally liable to Lone Star. Since American Chemical admits that it owes Lone Star at least $62,678.94 for 6,718.07 barrels of oil at $9.33, the Trial Court ordered American Chemical to deposit that amount in the registry of the Court.
In holding for Lone Star and against American Chemical for $132,785.31, the Trial Judge relied upon the Saybolt survey and the testimony of Lone Star's employees and found a contract for sale of 9,580.47 barrels of oil at $13.86 per barrel. The Trial Judge did not order American Chemical to reimburse Lone Star the $3,298.08 it spent for equipment used to load the oil. The Judge ordered American Chemical to pay legal interest from date of judicial demand only on the portion of the award of which was not deposited in the registry of the Court. The Judge found that Kay Strickland could not be held personally liable for the acts of American Chemical's agent, Jimmie Strickland, and that there was insufficient evidence to prove American Chemical was the alter ego of Ms. Strickland so as to justify "piercing the corporate veil".
In its appeal, Lone Star contends that Kay Strickland, as sole shareholder, director and officer, is personally liable in solido with American Chemical under La. R.S. 12:95 for acting fraudulently in the performance of the contract for the sale of the fuel oil, and alternatively, that she is liable personally as the alter ego of the corporation. Lone Star also argues that it should be awarded legal interest from date of judicial demand upon the full amount of the judgment since no funds were ever deposited in the Trial Court. Lone Star also assigns as errors the Trial Judge's denial of its right to cross-examine Ms. *1067 Strickland and to present certain testimony regarding an attempted bribery of Saybolt's employee.
Kay Strickland contends that she is not liable personally under any theory because there is no evidence that she or American Chemical acted fraudulently or in any manner justifying disregard of the corporate entity, that the fraudulent activity of Jimmie Strickland cannot be imputed to American Chemical or to her, and that in any event, evidence regarding an "alter ego" theory of liability is inadmissible as beyond the scope of the pleadings. Additionally, American Chemical argues that the Trial Judge's award of interest was proper since interest on an unliquidated claim is due only from the date of the judgment.
We find no error in the Trial Judge's factual determinations regarding the price and amount of fuel oil sold. The record supports his finding that there was a contract for the sale of 9,580.47 barrels of oil at $13.86 per barrel.
As to the issue of Kay Strickland's personal liability, we recognize that Louisiana courts are very hesitant to hold a shareholder, officer or director personally liable for corporate obligations. This is especially true when the parties contract with each other as corporations. La.R.S. 12:93(B). However, there is an exception where fraud or deceit has been perpetrated through the corporation. La.R.S. 12:95 provides:
Nothing in this Chapter shall be construed as in derogation of any rights which any person may by law have against a promoter, subscriber, shareholder, director or officer, or the corporation, because of any fraud practiced upon him by any of such persons or the corporation, or in derogation of any right which the corporation may have because of any fraud practiced upon it by any of these persons.
Although in many cases the personal liability of a shareholder, director or officer is based upon both, a R.S.12:95 action is separate from and does not require disregard of the corporate entity under the alter ego doctrine.
Hence, we need not consider whether American Chemical conducted business with the requisite corporate formalities or whether it was the alter ego of Kay Thomas Strickland since we find evidence in the record that she was aware of and participated in the fraud practiced upon Lone Star.
Fraud, as applied to contracts, is the perpetration of an error concerning a material part of a contract, created or continued by artifice, with design to obtain some unjust advantage or cause loss to the other party. La.C.C. art. 1847. The circumstances constituting fraud must be pleaded with particularity, but it may be proved by operation of presumptions. La. C.Civ.P. art. 856; La.C.C. art. 1848.
Testimonial and documentary evidence shows that American Chemical's account had only $25,465.32 on deposit to cover the $100,000.00 uncertified check, signed by Kay Strickland, when Jimmie Strickland gave it to Lone Star on Saturday, September 13, 1980. In fact, the account did not contain sufficient funds to cover the check until September 17 when Bride Oil wired its payment for resale of the fuel oil, and by then, Kay Strickland had stopped payment on the check.
We find this scheme very similar to the "check kiting" perpetrated by the president and shareholder of the defendant corporation in National Bank of Commerce in New Orleans v. Hughes-Walsh Co., 246 So.2d 872 (La.App.4th Cir.1971). In that case, the Court found fraud resulting in personal liability even though the individual defendant expected to receive and deposit funds in time to cover the overdrafts in a corporate checking account. Basing liability on La.R.S. 12:95, the Court found the advantage gained by the fraudulent scheme ultimately benefitted the individual who signed the checks because he owned 95% of stock in the corporation and held him liable in solido with his corporation.
*1068 The only factual conclusion we can reach in this case is that Kay Thomas Strickland drew the $100,000.00 check on American Chemical's account, perhaps hoping that payment for the resale of the oil would be received and deposited before Lone Star presented the check for payment. However, even before Lone Star's Dallas bank presented the check to American Chemical's bank, Kay Strickland decided to go a step further in her scheme and stop payment on the check. Kay Strickland was the only person authorized to sign for American Chemical's bank account, and Jimmie Strickland testified that she stopped payment on the check at his request. Under these facts we hold Kay Strickland and American Chemical solidarily liable to Lone Star for $100,000.00.
Additionally, the record clearly suggests fraud in the attempt to deceive Lone Star concerning the amount of oil which American Chemical received. The Saybolt survey showed a net total of 9,580.47 barrels loaded onto the barge. Yet at the same time that Jimmie Strickland was telling Lone Star that American Chemical received only 6,718.07 barrels, American Chemical was selling over 9,000 barrels to Bride Oil. American Chemical urges a defense based on modification of its contract with Lone Star, but we believe, as did the Trial Judge, that these facts speak for themselves and prove fraud.
The Trial Judge found evidence that Jimmie Strickland acted fraudulently, but he disregarded this evidence since Jimmie Strickland was not a defendant. Our careful review of the trial record convinces us that not only did Jimmie Strickland act fraudulently, but that he did so as the agent of American Chemical and that Kay Thomas Strickland furthered, condoned and benefitted from the fraud.
Having held that American Chemical and Kay Strickland are solidarily liable to Lone Star for at least the $100,000.00 amount of the check, we affirm the Trial Judge's denial of Ms. Strickland's exception of prescription. A suit brought against one of debtors in solido interrupts prescription with regard to all. La.C.C. art. 2097. The incidents which are the basis of Lone Star's claim occurred in September, 1980. Lone Star filed suit on November 10, 1980. Since American Chemical and Kay Strickland are solidarily liable to Lone Star, the timely suit against American Chemical interrupted prescription of the claim against Kay Strickland as well.
At trial, Lone Star attempted to show irregularities in American Chemical's corporate operations as well as the involvement of Kay Strickland in the activities of the corporation, especially those which are the basis of this lawsuit. In order to obtain evidence on these substantive issues, Lone Star chose to cross-examine Kay Strickland as an adverse party witness.
Lone Star called Ms. Strickland on the first day of trial for the limited purpose of ascertaining the existence of corporate documents to be procured under a subpoena duces tecum and then excused her "subject to recall". On the last day of the trial, Lone Star recalled Ms. Strickland as a witness, but the Trial Judge refused to allow questioning beyond the scope of identifying the corporate documents which had been produced.
Louisiana Code of Civil Procedure article 1634 provides:
Any party or his representative may be called as a witness and cross-examined by the adverse party without the latter vouching for his credibility, or being precluded from impeaching his testimony, and immediately thereafter the witness called may be examined or cross-examined to the extent otherwise permitted by law upon the subject matter of his examination in chief by such adverse party. The court may permit the recall and further cross-examination of the party or of his representative as often as it deems such action to be in the interest of justice.

* * * * * *
Under this statute, Lone Star was entitled to recall and further cross-examine Ms. *1069 Strickland even without reserving its right to do so, subject to the court's discretionary determination of the interests of justice. While the Trial Judge had discretion in the matter, we hold that he erred when he refused to allow Lone Star to cross-examine Ms. Strickland concerning issues at the very heart of its case against her. Since we believe that denial of the opportunity to cross-examine Kay Strickland prejudiced Lone Star, we hold that the case must be remanded to allow Lone Star to crossexamine Kay Strickland concerning the allegations that she is liable to Lone Star beyond the value of the $100,000.00 check. See Lumbermans Sash and Door Co. v. Greenup, 197 So.2d 689 (La.App. 4th Cir. 1967).
Lone Star's final contention concerns interest on the amount of the judgment in its favor. The Trial Judge ordered that Lone Star "shall have and recover legal interest on such portion of the award which was not deposited in the registry of the Civil District Court from the date of judicial demand until paid."
In its brief to this court, Lone Star alleges that American Chemical did not comply with the Court order to deposit funds in the registry of the court. American Chemical and Kay Strickland's response to these allegations is that because the claim was an unliquidated debt, interest is due only from the date of the judgment. There is no evidence in the record concerning any deposit of funds in the registry of the court. However, we do not need to examine that issue further since we apply a rule different than that in the Trial Judge's order.
All debts bear interest from the time they become due. La.C.C.art.1938. Here, the parties agreed that American Chemical owes Lone Star $62,678.94. Interest on that amount began to accrue September 13, 1980, the date American Chemical was to have delivered the check to Lone Star. Interest on the disputed, or unliquidated, portion of the contract price is due from the time the amount became ascertainable, that is from the date of the judgment. Roques v. Alfonso, 399 So.2d 1294 (La.App.4th Cir.1981).
Therefore, we affirm the judgment in favor of Lone Star Industries, Inc. and against American Chemical, Inc. for $132,785.31, with interest on $62,678.94 from September 12, 1980 and interest on $70,106.37 from the date of judgment.
We reverse the judgment in favor of Kay Thomas Strickland, and hold her liable to Lone Star Industries for $100,000.00, with interest from September 12, 1980.
We remand the case for the limited purpose of allowing Lone Star to cross-examine Kay Strickland concerning the allegations in Lone Star's Supplemental and Amending Petition.
American Chemical, Inc. and Kay Thomas Strickland are to pay all costs of this appeal.
REDMANN, C.J., dissents in part.
REDMANN, Chief Judge, dissenting in part.
Kay Thomas Strickland should be cast in solido with American Chemical for the full $132,785.31 price of the oil, plus $3,298.08 paid for equipment for American, with interest on the entire amount from judicial demand as prayed and as awarded by the trial court. (The trial court awarded interest from judicial demand "on such portion of the award which was not deposited in the registry of the ... court." Nothing was deposited prior to judgment.)