613 So.2d 671 (1993)
FIRST DOWNTOWN DEVELOPMENT, Plaintiff-Appellant,
v.
George E. CIMOCHOWSKI, John H. Smith, III, and Cardiac Surgery Associates of Northeast Louisiana (A Professional Medical Corporation), Defendants-Appellees.
No. 24328-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1993.
Opinion Amending Judgment January 28, 1993.
Writ Denied April 2, 1993.
*673 Crawford & Anzelmo by Brian E. Crawford, Lisa Rogers Trammell, Monroe, for plaintiff-appellant.
Hudson, Potts & Bernstein by James A. Rountree, Monroe, for defendants-appellees.
Before SEXTON, LINDSAY and STEWART, JJ.
STEWART, Judge.
Due to breach of a lease contract, plaintiff, First Downtown Development Partnership, sued Cardiac Surgery Associates of Northeast Louisiana (A Professional Medical Corporation) to recover damages. Plaintiff also sued Dr. George E. Cimochowski, President of the Medical Corporation, in his capacity as a corporate officer, for intentional interference with corporate contractual relations and for intentional fraudulent misrepresentation.
The trial court granted judgment for plaintiff as to Cardiac Surgery Associates and awarded $53,162.20, together with legal interest and costs. This award includes $6,094.00 in attorney's fees. The trial court granted judgment against plaintiff with regard to Dr. Cimochowski. Plaintiff appeals the judgment regarding Dr. Cimochowski's liability and the damage award *674 regarding the amount of attorney's fees. Dr. Cimochowski answers the appeal, asserting that the appeal is frivolous. We affirm the trial court judgment and deny the relief requested in the answer.

FACTS
On April 10, 1987, First Downtown Development Partnership and Cardiac Surgery Associates of Northeast Louisiana (A Professional Medical Corporation) (hereinafter called CSA) executed a three-year lease. Wesley S. Shafto signed the lease on behalf of First Downtown as its managing partner, and Dr. Cimochowski signed the lease on behalf of CSA as its president. The lease agreement provided for the lease of approximately 2,491 square feet of office space on the third floor of Washington Plaza in Monroe, Louisiana. The lease also required up front expenditures by First Downtown to "build-out" customized space to Dr. Cimochowski's specifications. First Downtown asserts that in June of 1987, the parties entered an oral agreement which increased the amount of leased square footage by approximately 157 feet, and increased the rent. A written amendment was prepared but was not signed by the parties. The April lease agreement provided that amendments to the lease must be made in writing.
On August 7, 1987, Dr. Cimochowski informed First Downtown that he would be leaving Monroe and that CSA would not honor the three-year lease. Dr. Cimochowski offered to honor the lease for one year, with or without occupying the space. First Downtown rejected this offer. First Downtown sued CSA, Dr. Cimochowski and Dr. John Smith (an employee of CSA) to recover rentals and/or damages for the full three-year term of the lease, subject to a credit for rentals received from third parties. Plaintiff voluntarily dismissed Dr. Smith and the case went to trial against CSA and Dr. Cimochowski.
The trial court granted judgment in favor of plaintiff against CSA in the amount of $53,162.20, together with legal interest and costs, but denied plaintiff's claim against Dr. Cimochowski. Plaintiff appeals that portion of the judgment which denied its claims against Dr. Cimochowski. Plaintiff also appeals the calculation of the damage award against CSA. Neither party appeals the finding of liability against CSA. Dr. Cimochowski answers the appeal seeking damages for frivolous appeal.

DISCUSSION

Tortious Interference with Contractual Relations
In 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989), the Louisiana Supreme Court "... recognized the possibility of a narrowly drawn action for a corporate officer's intentional and unjustified interference with contractual relations between his employer and a third party." Great Southwest Fire Insurance Company v. CNA Insurance Companies, 557 So.2d 966, 969 (La.1990).
Prior to 9 to 5 Fashions, there was no cause of action against one who was not a party to the contract and who induces another party to the contract to breach it. See Lucky v. Fricks, 511 So.2d 1315, 1317 (La.App. 2d Cir. 1987), writ denied, 514 So.2d 455 (La.1987), and cases cited therein. It was considered "... well settled that one who is not a party to a contract is not liable in damages to one of the parties to the contract for inducing the other party to breach the contract." Cust v. Item Co., 8 So.2d 361, 363 (La.1942) (citations omitted). 9 to 5 Fashions annulled the delictual rule that absolutely barred any action based on tortious interference with a contract, but only to the extent that the rule conflicts with 9 to 5 Fashions. See 9 to 5 Fashions, Inc., supra, at 234; see also, Tallo v. Stroh Brewery Co., 544 So.2d 452 (La.App. 4th Cir.1989). The court subsequently indicated that it would proceed with caution in expanding the narrowly drawn cause of action for intentional and unjustified interference with contractual rights. See Great Southwest Fire Insurance Company, supra. Accordingly, 9 to 5 Fashions has limited application.
In its first assignment of error, appellant, First Downtown, asserts that the *675 trial court erred in its conclusion that Dr. Cimochowski was justified in causing CSA to breach the lease and thus was not personally liable for intentional interference with contractual relations between plaintiff and CSA. Appellant argues that appellee had long-standing difficulties with St. Francis Hospital and had planned to leave Monroe two or three months before he notified appellant that he was leaving. Although appellee testified that he notified appellant immediately after he decided to accept a position in Virginia, appellant contends that appellee should have notified it that he was considering leaving Monroe.
Implicit in appellant's allegations and argument is the presumption that appellee owed a duty to appellant to disclose his difficulties with the hospital and/or to notify appellant that he was seeking employment elsewhere. However, 9 to 5 Fashions does not create such duties. The court specified that,
In the present case we recognize, as set forth particularly herein, only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person.
9 to 5 Fashions, Inc., supra, at 234. Appellee, Dr. Cimochowski decided to leave Monroe some time prior to August 7, 1987, the date he notified appellant of his decision. Both appellant and appellee presented evidence that appellee had been dissatisfied with the equipment and staff provided by St. Francis Hospital for some time. Appellee testified that the job opportunity which he selected gave him the opportunity to do heart transplants and to practice with renowned cardiologists. He further stated that he took a cut in pay in order to take advantage of this opportunity.
As a corporate officer, appellee's 9 to 5 Fashions duty to refrain from intentional and unjustified interference with the lease agreement is not, under these facts and circumstances, the equivalent of a duty to disclose to appellant either his conflict with St. Francis or his desire to find employment elsewhere. We find that 9 to 5 Fashions, Inc.'s narrow exception to the general rule that no action lies for tortious interference with contractual relations does not apply in this case.

Piercing the Corporate Veil
Appellant contends that the trial court should have pierced the corporate veil because (1) CSA was appellee's alter ego, and/or (2) appellee's actions and omissions constituted fraud.
It is well settled that a corporation is a distinct legal entity, separate from the individuals who comprise it. LSA-C.C. art. 24; Cahn Electric Appliance Co., Inc. v. Harper, 430 So.2d 143 (La.App. 2d Cir. 1983); American Bank of Welch v. Smith Aviation, Inc., 433 So.2d 750, 752 (La.App. 3d Cir.1983); George A. Hormel & Co. v. Ford, 486 So.2d 927 (La.App. 1st Cir.1986). However, in a few limited situations, a litigant can reach an individual shareholder by "piercing the corporate veil," thereby rendering the individual liable for the debts incurred by the corporation. Cahn Electric Appliance Co., Inc., supra (citation omitted).
Louisiana courts are very hesitant to hold a shareholder, officer or director personally liable for corporate obligations. Lone Star Industries v. American Chemical, Inc., 461 So.2d 1063, 1067 (La.App. 4th Cir.1984). LSA-R.S. 12:93 B provides that a shareholder is not personally liable for any debt or liability of the corporation. Generally, if directors and officers of a corporation do not purport to bind themselves individually they do not incur personal liability for debts of the corporation except for acts of fraud, malfeasance or criminal wrongdoings. DeRoche v. P & L Construction Materials, Inc., 554 So.2d 717, 719 (La.App. 5th Cir.1989), writ denied, 559 So.2d 1359 (La. 1990) (citations omitted).
Regardless of the basis for piercing the corporate veil, the situation must be viewed with regard to the totality of circumstances in each case. American Bank of Welch, supra; George A. Hormel & Co., supra. It should be kept in mind that in Louisiana the concept of the separation of the corporate entity from those who compose *676 it is the general rule and is firmly established. See American Bank of Welch, supra; LSA-C.C. art. 24.
A corporate creditor has the burden of proving that the corporate agent is liable for corporate debts. DeRoche, supra. Whether imposition of individual liability is justified under particular circumstances is primarily a factual finding to be made by the trial court. George A. Hormel & Co., supra (citation omitted); Smith-Hearron v. Frazier, Inc., 352 So.2d 263, 265 (La.App. 2d Cir.1977), writ denied, 353 So.2d 1337 (La.1978). A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
With these legal principles in mind, we now examine the two theories which appellant asserts as the basis for piercing the corporate veil.
1. Alter Ego Theory.
Appellant asserts as error the trial court's conclusion that the evidence failed to show that CSA was the alter ego of appellee, Dr. Cimochowski. Noting that (1) appellee was the sole shareholder, officer, and director of CSA, (2) the corporation had no source of income other than from his medical practice, and (3) appellee testified that he basically "was the corporation", appellant asserts that CSA is appellee's alter ego. For this reason, appellant asserts that CSA's corporate nature cannot shield him from personal liability for obligations contracted in CSA's name.
In this exception whereby the court may ignore the corporate fiction and hold an individual shareholder liable for the corporation's debts, courts commonly refer to the corporation as the "alter ego" of the shareholder. See American Bank of Welch, supra at 752. The alter ego doctrine involves the failure to conduct a business on corporate footing, thereby disregarding the corporate entity to such an extent that the corporation ceases to be distinguishable from its shareholders. Kingsman Enterprises v. Bakerfield Electric Co., 339 So.2d 1280, 1282 (La.App. 1st Cir.1976). Indicia of this disregard include commingling of corporate and shareholders' funds; failure to follow statutory formalities in the transaction of corporate affairs; undercapitalization; failure to provide separate bank accounts and bookkeeping records; and failure to hold regular shareholders and directors meetings. Holley v. Palermo, 461 So.2d 539 (La.App. 3d Cir.1984); Kingsman Enterprises, supra.
The only evidence in the trial record about CSA's corporate structure and activities was in excerpts of appellee's deposition and in other scattered portions of testimony. This testimony reveals that appellee hired an attorney to set up CSA as a corporate entity. The record shows that CSA hired a business manager to whom appellee delegated tasks such as payment of bills, overseeing the Washington Plaza construction and plans for moving, handling mail, etc. There was no evidence that CSA exhibited any of the aforementioned indicia of disregard of corporate formalities. On this sparse record, we conclude that the trial court properly determined that appellant failed to show that, under this exception, appellee was personally liable to it for the corporation's debts.
2. Fraud.
Appellant asserts that appellee is liable to it for fraudulent conduct because he decided to leave Monroe and to breach the contract in May or June 1987 but did not disclose this decision until August 1987.
A director or officer who has practiced fraud upon any person, may be held personally liable for the resultant damages. Kingsman, supra; Deroche, supra. LSA-R.S. 12:95 specifically preserves the rights any person may have against the individual shareholder, director or officer because of the individual's fraudulent practices.
Fraud, as applied to contracts, is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party *677 or to cause loss or inconvenience to the other. LSA-C.C. art 1953. Fraud may also result from silence or inaction that is calculated to produce a misleading effect. Id.; Comment (b), LSA-C.C. art. 1953. Two elements essential to establishing legal fraud are intent to defraud or gain an unfair advantage and a resulting loss or damage. Heyl v. Heyl, 445 So.2d 88 (La. App. 2d Cir.1984), writ denied 446 So.2d 1228 (La.1984); LSA-C.C. art. 1953.
To find fraud from silence or suppression of the truth, there must exist a duty to speak or to disclose information. Greene v. Gulf Coast Bank, 593 So.2d 630, 632 (La.1992); Bunge Corporation v. GATX Corporation, 557 So.2d 1376, 1383 (La.1990).
The existence of this duty is a legal question. Relevant factors include whether the obligation is being imposed on a seller, who is more likely to be required to disclose, the importance of the fact not disclosed; the relationship of the parties; and the nature of the fact not disclosed.
Bunge, supra at 1384. Certain special circumstances, such as where the parties stand in some confidential or fiduciary relation to one another, will give rise to a duty. See Greene, and Bunge Corporation, both supra.
Although in many cases the personal liability of a shareholder, director, or officer is based upon both R.S. 12:95 fraud and disregard of the corporate entity, a R.S. 12:95 action is separate from and does not require disregard of the corporate entity under the alter ego doctrine. Lone Star Industries, supra.
At issue is (1) whether appellant has proven that appellee, Dr. Cimochowski, had a duty to disclose his decision to leave earlier than August 7, 1987, when he told appellant of his decision and, if the duty exists, then (2) whether appellant has shown that appellee intended to defraud or gain an unfair advantage. Each of these issues is dispositive on the question of fraud under the instant circumstances, therefore a failure to prove either issue is fatal to appellant's claim that appellee is personally liable for damages because of fraud. Because appellant bases its theory of fraud on appellee's silence, even fraudulent intent is insufficient to confer liability upon appellee in the absence of a duty to disclose. We shall therefore address the duty issue first.
Appellant argues that appellee knew as early as May 1987 that he intended to breach the lease agreement and that his concealment of this intent was fraudulent. This argument presumes that appellee owed a duty to appellant to disclose the nature of his relationship with St. Francis Medical Center and/or the possibility that he would accept a future job offer elsewhere. In effect, appellant seeks that this court recognize a duty that appellant disclose, prior to August 7, 1987, his expected future relationship with CSA and/or Monroe.
If the president of a large corporation had decided to relocate or to resign, that decision, itself, would not be fraud. Appellant has cited, and we have found, no statutory or jurisprudential authority for the proposition that appellee's decision should be treated any differently solely because appellee was the only shareholder and officer of CSA. Likewise, appellant cites no authority to support the proposition that a sole officer, shareholder, agent of a corporation, whose medical services were the primary business of the corporation, committed fraud because he changed his mind about fulfilling his lease obligations so that he could accept employment elsewhere.
No special relationship existed between appellant and appellee such as would create a duty to disclose. See Greene, and Bunge Corporation, both supra. While the facts about appellee's relocation are, in retrospect, important to appellant, in May through July 1987 these facts were personal to appellee regarding his career. At that time, they involved a possible or probable future event rather than a past or present event. On this record, we find no duty to disclose and hence no fraud in appellee's silence about his plans to relocate.
*678 Appellee testified that he decided to accept the new position in early August 1987. He notified appellant of his decision on August 7, 1987. Assuming, arguendo, that appellee had a duty to disclose this information at an earlier date, the evidence supports the trial court determination that appellant failed to show fraudulent intent.
LSA-C.C. art. 1953 requires not only that there be a misrepresentation, but also that the misrepresentation be made with the "intention" of gaining an unjust advantage. Fuller v. Barattini, 574 So.2d 412, 416 (La.App. 5th Cir.1991). Appellee testified that he was upset because his decision to relocate would cause CSA to breach the lease agreement. He stated that he had never before breached such an agreement. His reasons for deciding to leave included conflict with the hospital, opportunity to work with renowned cardiologists, and other career-related objectives. The record reveals that there was no animosity or other conflict between appellee and appellant prior to the date appellee disclosed the fact that he was leaving Monroe. Appellee testified, and the trial court found, that appellee did not decide to leave Monroe in order to breach the lease or to cause inconvenience to appellant. Under these circumstances, we do not find that the trial court was clearly wrong or manifestly erroneous in its factual determination that appellee's conduct did not constitute fraud. Accordingly, we find no error in the trial court finding that appellee has no personal liability for CSA's breach of its lease obligations. See and compare, Fuller, supra; Altex Ready-Mixed Concrete Corp. v. Employers Commercial Union Insurance Co., 308 So.2d 889, 892 (La.App. 1st Cir.1975), writ denied, 312 So.2d 872 (La.1975); Lone Star Industries, supra.
Appellant also asserts as error the trial court's conclusion that appellee's intent at the time the "original" lease was executed on April 10, 1987 was conclusive on the question of fraudulent misrepresentation. Appellant argues that the trial court erred as a matter of law in failing to recognize that there are two types of fraud, one of which occurs during the performance of a contract. The fraud in performing a contract necessarily occurs after the formation of the obligation.
Although appellant correctly points out that fraud may occur after formation of the obligation, the record reveals no such fraud occurred here for the foregoing reasons. Even if the trial court's conclusion was an error of law, appeal or review lies only from the judgment, not the reasons therefor. White v. McCoy, 552 So.2d 649 (La.App. 2d Cir.1989). We find no error in the trial court judgment in favor of appellee on the question of his personal liability.

Attorneys Fees
Appellant contends that the trial court awarded attorneys fees in an amount less than that to which it is entitled.
In making awards for attorney fees, the trial court is vested with great discretion, the exercise of which will not be interfered with absent a clear abuse. D'Angelo v. Poche, 434 So.2d 120, 123 (La. App. 5th Cir.1983), writ denied, 435 So.2d 444 (La.1983); Easterling v. Halter Marine, Inc., 470 So.2d 221, 224 (La.App.4th Cir.1985), writ denied, 472 So.2d 920 (La. 1985).
The trial court granted judgment in favor of appellant against CSA in the amount of $53,162.20, together with legal interest and costs. The trial court calculated damages as follows:

Total rent due under the contract $ 89,394.00
Extra costs to make space functional 3,538.00
 ____________
 Subtotal 92,932.75
Construction costs 8,000.00
 ____________
 Subtotal 100,932.75
Less Third Party rentals 54,704.75
 ____________
 Subtotal 46,228.00
Plus attorneys fees (15% of $46,228) 6,934.00
 ____________
TOTAL $53,162.20

The figure used by the trial court as the amount of rent due under the contract is the same figure appellant asserts in brief. Appellant re-leased the premises after appellee's breach of the contract and collected $54,704.75 in rentals. The $6,094.00 which was awarded to appellant for attorney fees *679 is 15% of the rentals due, after deduction of rentals received from third parties.
Appellant observes that the lease provided for contractual attorney fees of 15 percent of the total rent due under the lease and claims that the total rent due of $89,394.75, under the parties' lease agreement, yields contractual attorney fees of $13,409.21. Appellant contends that the contractual attorneys fees should be calculated as 15% of the total $89,394.75 rent due, rather than as 15% of the $46,228 total less third party rentals.
Section 19 B of the lease provides in pertinent part, the following:
Should an attorney be employed by either Landlord or Tenant to give special attention to the enforcement or protection of any claim of Landlord or Tenant arising from this Lease, the other party hereto, if such claimant is successful, shall pay as fees and compensation to such attorney, an additional sum of fifteen (15%) percent of the amount of such claim, the minimum fee, however, to be $500.00, or if the claim be not for money, then such sum as will constitute a reasonable fee, together with all costs, charges and expenses if such claim is successfully asserted.
After a review of the record, we have determined that the award granted to appellant by the trial court is in compliance with the lease agreement. Appellant's claim for lost rent under the lease is the amount due under the lease, less third party rentals. See Sunbelt Security Services v. Delahoussaye, 572 So.2d 598, 606 (La.App. 4th Cir.1990); see and compare Keever v. Knighten, 532 So.2d 826, 828 (La.App. 4th Cir.1988), writ denied, 533 So.2d 381 (La. 1988). The lease agreement requires compensation to the attorney of 15% of the amount of the claim. Where there were offsetting third party rentals, appellant had no claim for the entire amount due under the lease. Accordingly, we find no abuse of the trial court's discretion.

Penalties and Attorney's Fees for Frivolous Appeal
In his answer to the appeal, appellee requests damages for frivolous appeal. There is no merit to this demand, and it is denied.

CONCLUSION
Appellant, First Downtown, has no basis for a contractual claim because appellee was not a contracting party. Appellant's claim under the tort theory of intentional and unjustified interference with contract has no merit because it does not fall within the narrow action created in 9 to 5 Fashions, Inc., supra. Appellant's fraud theory fails because appellee had no duty to disclose his relocation plans and, in the absence of a duty to speak, silence is not fraud. Moreover, even if appellee had duty to disclose this information prior to the time he did so, appellant failed to show the requisite intent to defraud. Although creative and interesting, appellant's argument is not compelling. It falls woefully short of establishing that appellant had either (1) a duty to disclose sooner his plan to relocate, or (2) the requisite intent to defraud. For these reasons, appellee, Dr. Cimochowski, is not personally liable for CSA's failure to perform its lease obligations and the trial court judgment is affirmed as to Dr. Cimochowski.
Finding no error in the trial court's award of attorney's fees, we affirm this aspect of the judgment, as well.
AFFIRMED.
PER CURIAM.
On January 20, 1993, this court affirmed the trial court's judgment which denied appellant's claim against appellee but did not assess costs of the appeal. Accordingly, we amend the judgment to add the following language:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that costs of appeal be assessed against the appellant in accordance with LSA-C.C.P. art. 1920.