JiCIACCIO, Judge.
After obtaining a judgment against Nicholson Management and Consultants, Inc. (hereinafter “NMC”), plaintiffs brought this oblique action against Anthony Nicholson (“Nicholson”), the sole owner of NMC, seeking to force NMC to enforce its rights against Nicholson and to hold Nicholson liable for NMC’s debt to plaintiffs. Nicholson filed several exceptions to this action, including exceptions of prescription, no cause of action and res judicata. The trial court overruled the exception of no cause of action and deferred the exception of prescription to the merits, but Nicholson’s exception of res judi-cata was granted, thereby dismissing plaintiffs’ petition. From this adverse ruling, *473 plaintiffs now appeal. For the reasons stated herein, we affirm the trial court’s dismissal of plaintiffs’ action.
FACTUAL AND PROCEDURAL HISTORY

Nicholson I

In order to address the claims raised in this appeal, it is necessary to first state the factual and procedural history of the original suit filed by plaintiffs in this matter, which the parties refer to in brief as “Nicholson I.” In 1986, plaintiffs, Thomas H. Bergman, trustee of the Stewart Children Trust and United Department Stores Company No. 1, filed suit for negligence and breach of contract against NMC and Nicholson seeking a money judgment and to enforce a mortgage. The matter was tried before a commissioner, and on April |¾3, 1990, the trial court rendered judgment in favor of plaintiffs and against NMC on the issue of NMC’s negligence and breach of contract. NMC was ordered to pay plaintiffs $2,000,000.00 plus interest from the date of demand. However, the trial court entered judgment against plaintiffs and in favor of Nicholson on the issue of his negligence and breach of contract. Plaintiffs appealed from this judgment, and this court affirmed the trial court’s ruling in an opinion dated January 30, 1992. Bergman v. Nicholson Management and Consultants, Inc., et al., 594 So.2d 491 (La.App. 4 Cir.1992.) The Supreme Court denied writs on June 19, 1992. 600 So.2d 646 (La.1992).
A clear statement of the facts leading up to this original suit was set forth in this court’s previous opinion and is relevant to these proceedings.
On December 28, 1984, Thomas H. Bergman, trustee of the Stewart Children Trust and United Department Stores Company No. 1, (plaintiffs) sold and conveyed “Orleans East Apartments” and its furnishings to Nicholson Management and Consultants, Inc. (NMC), a Florida corporation wholly owned by Anthony Nicholson. The credit sale created an in rem mortgage on the property existing in favor of Mutual Insurance Company of New York (MONY).
In consideration of the credit sale, NMC tendered to plaintiffs $25,000, less certain credits, and executed two promissory notes dated December 28, 1984 payable to plaintiffs. The first note was for the amount of $475,000 and due in 90 days, and the other was a non-recourse note for the amount of $3,500,000 and payable in 180 consecutive monthly installments commencing February 1, 1985 and ending on December 1, 1999. Under the terms of the $3,500,000 note and the act of credit sale, in the event of default on any installment, the entire principal indebtedness and all accrued interest came due. As security for the down-payment, Nicholson gave his personal continuing guaranty up to the principal amount of $475,000, plus all interest, attorney’s fees and costs.
The act of credit sale and the promissory notes were executed by Nicholson as president of NMC. Nicholson, who was the sole owner, director and Rofficer of NMC, asserted that he had full authority to purchase and mortgage the property. He, nevertheless, agreed to have NMC’s secretary deliver to plaintiffs a corporate resolution confirming his authority. This deliver did not occur until discovery in this action commenced.
[[Image here]]
A ground lease of the land on which the property subject to the credit sale was situated was also executed on December 28, 1984. It provided for an annual guaranteed rent of $80,000.
Nicholson’s attorney, Charles Rosen, tendered the property back to plaintiffs at the end of 1985, alleging redhibitory defects. NMC, thereafter, defaulted on the ground lease, the MONY mortgage and the $3,500,000 note in January of 1986.
Plaintiffs then filed suit for a money judgment and to enforce the mortgage executed by defendants. As the corporate resolution had not been tendered to plaintiffs by NMC or Nicholson, executory process was not available. Plaintiffs therefore sought to enforce the mortgage via ordinaria. While plaintiffs were attempting to foreclose *474 through ordinary proceedings, MONY judicially sold the property on February 19,1987 at a sheriffs sale for $950,000 thereby satisfying the first mortgage. As a result, plaintiffs lost their in rem mortgage and their ground lease (valued at $919,987.96).
Plaintiffs argued at trial that Anthony Nicholson was personally liable for their loss in tort and in contract based on Nicholson’s status as alter ego of NMC. The commissioner issued a recommendation finding Nicholson and NMC solidarity liable for plaintiffs’ claims. After reviewing the claims, the trial court determined it could not hold Nicholson personally liable for NMC’s debt to plaintiffs as they did not prove he intentionally or fraudulently caused the corporation to breach the contractual obligations it owed to them. The Rlower court further found that Nicholson signed the contract in the disclosed capacity of president of NMC, and therefore could not be held personally liable for the performance of NMC’s contracts. The trial court also found that NMC was not Nicholson’s alter ego, and that Nicholson could not be held solidarity liable with NMC. Judgment was therefore entered in favor of plaintiffs and solely against NMC in the amount of $2,000.00. Judgment was also entered in Nicholson’s favor, dismissing plaintiffs’ suit against him.
From this judgment, plaintiffs appealed and NMC answered the appeal assigning several errors of the trial court. This court affirmed the judgment of the trial court, stating that the trial court properly found plaintiffs had failed to prove Nicholson acted fraudulently subjecting himself to personal liability. The Supreme Court denied plaintiffs’ application for writs on June 19, 1992, and the judgment of the trial court became final on that date.

The Oblique Action

On May 12,1994, plaintiffs filed the instant Petition for Oblique Action against Anthony Nicholson, averring that plaintiffs are the creditors of NMC as a result of the judgment entered by the trial court on April 30, 1990. Plaintiffs alleged that NMC is insolvent and had faffed to bring an action against Nicholson to recover damages incurred by NMC due to the fault of Nicholson. Plaintiffs claimed that Nicholson is guilty of mismanagement and breach of the duty of good faith, making him liable to NMC, and thus liable to the plaintiffs as NMC’s judgment creditors. This petition was filed in Division “M” of the Civil District Court, while Nicholson I was heard in Division “D.”
In response to this petition, Nicholson initially filed exceptions of lack of personal jurisdiction and no cause of action which were overruled by the trial | ¡¡court.[1] Nicholson’s exception of vagueness was granted, requiring plaintiffs to amend their petition to plead their claims with specificity.
On October 25, 1994, plaintiffs amended their petition for oblique action and referred to evidence of Nicholson’s breach of duty as outlined in the evidence presented in Nicholson I and the facts summarized in the commissioner’s written reasons in that case. On January 25, 1995, Nicholson answered plaintiffs’ action, and additionally filed exceptions of no cause of action, res judicata and prescription.
On March 8, 1995, defendant filed an ex parte motion to transfer this action to the section of the district court which heard Nicholson I, and an order was signed on March 14,1995 transferring this action from Section “M” to Section “D” of the Civil District Court. Further an order was signed on March 15, 1995 consolidating this action with Nicholson I. Defendant did not seek supervisory review of these orders.
Defendant’s exceptions were argued in Section “D” on June 2, 1995, and by judgment dated July 28, 1995, the trial court overruled the exception of no cause of action and deferred the exception of prescription to the merits. The trial court also granted defendant’s exception of res judicata, thereby dismissing plaintiffs petition. From this adverse ruling, plaintiffs now appeal, asserting two assignments of error:
*475 1) The district court erred in dismissing plaintiffs; suit upon the grounds of res judicata, and
2) The district court erred in consolidating a new, | f,ongoing suit into a closed case in which final judgment was rendered.
DISCUSSION

Transfer and Consolidation

Plaintiffs argue that the trial court erred in transferring its petition for oblique action to the section of the court which heard Nicholson I. They argue that based on La. C.C.P. art. 1561, consolidation is only appropriate for two or more separate suits which are pending in the same court.
Although we find merit in plaintiffs’ argument that a pending case may not be consolidated with a case which has been fully adjudicated and is final and closed, the record shows that plaintiffs failed to seek supervisory review of the trial court’s orders of transfer and consolidation at the time they occurred. We find that plaintiffs’ attempt to vacate the subsequent judgment entered on the basis of improper transfer and consolidation is untimely. The fact that the cases may have been improperly consolidated does not render the judgment null and void.
Nevertheless, the local rules of the Civil District Court provide in part as follows:
To achieve continuity of case management, and to avoid the appearance of forum shopping, it is the policy of the court that subsequent but related cases should be transferred to the division to which the original case was allotted, whether or not such earlier ease is still pending. It shall be the duty of any attorney is such cases to call to the court’s attention the existence of such earlier case.
Rule 6, Section 4.
Based on this provision, we find that the order of the trial court transferring plaintiffs’ petition for an oblique action to the division of the Civil ^District Court which heard Nicholson I was within the discretion of the trial court. Although the court’s order consolidating these two cases may have been improper, plaintiffs failed to seek our supervisory review of this order, and they are therefore not entitled to the relief they seek at this point.

Res Judicata

Although plaintiffs contend on appeal that the trial court erred in granting defendant’s exception of res judicata, our review of the record shows that the exceptions of prescription and no cause of action, which were urged by defendant both at the trial level and in this Court, have merit. Because we hold that the exceptions of no cause of action and prescription were improperly overruled by the trial court and that the trial court should have dismissed plaintiffs’ action on those grounds, we do not reach plaintiffs’ arguments concerning the issue of res judica-ta.

Prescription

In their Petition for Oblique Action filed on May 12, 1994, plaintiffs allege as follows:
2.
United Department Stores Company No. 1 and Merril Lynn Stewart, Charles William Stewart, Jeffrey Robinson Stewart, Edward Asher Stewart, Ellen Natania Stewart and Richard Stangel Stewart, by virtue of a trust agreement dated September 25, 1978, as amended March 31, 1980 (hereinafter occasionally the “Stewart Children Trust”), through Thomas H. Bergman, Trustee, are the creditors of NMC as a result of the judgment rendered in Bergman v. Nicholson Management and Consultants, Inc., No. 86-15903, consolidated with, No. 86-15904, aff'd, 594 So.2d 491 (La.App. 4th Cir.), writ denied, 600 So.2d 646 (La.1992) (hereinafter “Nicholson I”).
3.
IgWhile NMC is insolvent, a condition caused and/or increased by the acts of Nicholson, it has not brought suit against Nicholson to recover the damages incurred by it.
Plaintiffs contend that the applicable prescriptive period for this cause of action is ten *476 years, citing Spruiell v. Ludwig, 568 So.2d 133, 138 (La.App. 5th Cir.1990), writ denied, 573 So.2d 1117 (La.1991), which held that actions based on a breach of fiduciary duty constitute personal actions subject to a liberative prescriptive period of ten years. However, that case dealt with shareholder’s derivative actions, and is therefore distinguishable from the present case.
In the present case, plaintiffs are asserting an oblique action which is governed by Chapter 12 of the section of Book III of the Civil Code dealing with conventional obligations or contracts. Chapter 12 is entitled “Revocatory Action and Oblique Action” and is comprised of C.C. articles 2036 — 2044. Section 1 of that chapter is entitled “Revocatory Action” while Section 2 is entitled “Obligue Action.” Article 2044 provides the basis for an oblique action, and states as follows:
If an obligor causes or increases his insolvency by failing to exercise a right, the obligee may exercise it himself, unless the right is strictly personal to the obligor.
For that purpose, the obligee must join in the suit his obligor and the third person against whom that right is asserted.
Article 2041 of that chapter provides as follows:
The action of the obligee must be brought within one year from the time he learned or should have learned of the act, or the result of the failure to act, of the obligor that the obligee seeks to annul, but never after three years from the date of that act or result.
19PIaintiffs argue that because article 2041 is found in Section 1 of this chapter and article 2044 relating to the oblique action is found in Section 2, the article 2041 prescriptive period does not apply to the oblique action. We do not agree.
Our careful review of the codal provisions reveals that article 2041 is the specific prescriptive article which governs the prescription of actions brought under Chapter 12, including both oblique and revocatory actions. The ten year liberative prescriptive period is a general provision applicable only in absence of another specific legislative statement. La. C.C. art. 3499 and Revision Comment (b); Harrison v. Gore, 27,254 (La.App. 2nd Cir. 8/23/95), 660 So.2d 563, writ denied 95-2347 (La.12/8/95), 664 So.2d 426. We reject plaintiffs’ argument that this action, which is specifically set forth in Chapter 12 of this section of the Civil Code, is governed by the general liberative prescriptive period.
Applying the prescriptive period set forth in Article 2041 to the present lawsuit, we conclude that plaintiffs’ action has prescribed on its face. Plaintiffs allege that their cause of action arose as a result of the judgment rendered against NMC which became final when the Louisiana Supreme Court denied writs. As a matter of public record, we find that the judgment became final on June 19, 1992. See, Bergman v. Nicholson Management and Consultants, Inc., et al., 600 So.2d 646 (La.1992). At the time the judgment became final, NMC had not asserted a cause of action against Anthony Nicholson although both parties were named as defendants in the suit brought by plaintiffs. At this point, plaintiffs knew or should have known that NMC had failed to exercise its rights against Nicholson, and, according to C.C. art.2041, plaintiffs had one | ipyear from the date of this final judgment to assert their oblique action. Plaintiffs’ action was not asserted until May 12, 1994, almost two years after plaintiffs should have known of this cause of action. Plaintiffs’ cause of action has therefore prescribed the face of the pleadings, and it is therefore unnecessary to remand the ease to the trial court for further evidence. See, Herbert v. Travelers Indem. Co., 255 La. 645,232 So.2d 463 (La.1970).

No Cause of Action

Although the trial court denied defendant’s exception of no cause of action, defendant reurges this exception on appeal. We find this exception to have merit.
In considering an exception of no cause of action the court must consider only the factual allegations of the petition and any documents attached to and made part thereof. These factual allegations are accepted as true for purpose of testing the legal sufficiency of the petition. In its petition as amended plaintiffs alleged the following facts:
*477 Nicholson breached his duties in NMC in that he mismanaged NMC’s assets, (2) did not discharge his duties in good faith, (3) failed to exercise that degree of diligence, care, loyalty, judgment, and skill required of him in the conduct, direction, supervision, and control of the business and of the affairs of NMC, and (4) committed or permitted acts and omissions which resulted in severe loss to NMC and waste of its assets, all as more fully outlined in the evidence present at Nicholson I and summarized in the Commissioners Written Reasons filed in Nicholson I, a copy of which is attached hereto and made a part hereof, as well as failure to make necessary repairs, failure to manage the property in accordance with good business practice such as screen tenants, collect rent, enforce the terms of tenant leases, etc., failure to engage in preventive maintenance, failure to supervise tenants, failure to make any efforts to prevent theft or vandalism, siphoning off available funds for uses other than to | npreserve the property, and simply allowing the property to fall into a total state of ruin, among other acts, all while it was under his sole control and direction.
Plaintiffs contend that the right they seek to have NMC enforce through this oblique action is the right of NMC to sue Nicholson for breaching his fiduciary duties to NMC. Plaintiffs assert that as creditors their action is no different than a shareholder’s derivative action, and that fiduciary duties are owed to the corporation, its shareholders and its creditors. In support of its position, plaintiffs have referred to a line of case in which a creditor’s claim against a corporate principal for breach of a fiduciary duty was recognized. Lopez v. TDI Services, Inc., 93-619 (La.App. 3 Cir. 2/2/94), 631 So.2d 679, writ denied, 94-0864 (La.6/3/94), 637 So.2d 501 (La.1994); Hooper v. Maruka Machinery Corp. of America, 525 So.2d 1113, 1117 (La.App. 5th Cir.1988); Abraham v. Lake Forest, Inc., 377 So.2d 465 (La.App. 4th Cir.1979), writs denied, 380 So.2d 99,100 (La.1980). In these cases, however, the plaintiffs plead or established fraud on the part of the defendant, whereas in the instant case fraud was neither alleged nor proved.
Our jurisprudence has historically recognized that corporate principals have a fiduciary relationship not only to the corporate entity but also to its creditors and are, thus, under a certain obligation to see that creditors are paid. Hooper v. Maruka Machinery Corp., supra; Abraham v. Lake Forest, Inc. supra.
However, a corporation is a legal entity separate and distinct from the individuals who compose it. L.L. Ridgway Company v. Marks, 146 So.2d 61 (La.App. 4 Cir.1962). A corporate official agent is ordinarily not hable ior Incorporate debts. Louisiana courts are very hesitant to hold a shareholder, officer or director personally Hable for a corporate obligation. Lone Star Industries v. American Chemical, 461 So.2d 1063 (La.App. 4 Cir.1984), writ denied, 465 So.2d 738 (La.1985). LSA-R.S. 12:93 B provides that a shareholder is not personally Hable for any debt or HabiHty of the corporation. LSA-R.S. 12:95 excepts actions for fraud from this provision.
Generally, if directors and officers of a corporation do not purport to bind themselves individually they do not incur personal liability for debts of the corporation except for acts of fraud, malfeasance or criminal wrongdoings. L.L. Ridgway Company v. Marks, supra. A corporate creditor has the burden of proving that the corporate agent is liable for corporate debts. Bricks Unlimited, Inc. v. Lemoine Homes, Inc., 380 So.2d 714 (La.App. 4 Cir.1980). See also, Deroche v. P & L Const. Materials, Inc., 554 So.2d 717, 719 (La.App. 5 Cir.1989) writ denied, 559 So.2d 1359 (La.1990); First Downtown Dev. v. Cimochowski, 613 So.2d 671 (La.App. 2 Cir.), writ denied, 615 So.2d 340 (La.1993).
In the present case, even accepting the allegations of plaintiffs’ petition as true, there are no allegations or proof of fraud by Anthony Nicholson that would expose him to personal liability. In fact, in Nicholson I, the trial court held that Nicholson was not the alter ego of NMC and could not be held personally liable for NMC’s debts, and this judgment is now final. Plaintiffs petition for oblique action does not aver any additional *478 facts which would subject Nicholson to personal liability for NMC’s debt to plaintiffs. Although plaintiffs argue that they are not asserting a direct action against Nicholson, but are employing the oblique action to force NMC to enforce its rights, we find that absent an allegation or proof of fraud, plaintiffs petition on behalf of the Incorporation nevertheless fails to state a cause of action against Anthony Nicholson. We therefore conclude that plaintiffs’ petition for oblique action has failed to state a cause of action against Anthony Nicholson for breach of fiduciary duty, and the trial court erred in failing to grant defendant’s exception.
CONCLUSION
Accordingly, for the reasons assigned, the judgment of the trial court dismissing plaintiffs’ Petition for Oblique Action against Anthony Nicholson is affirmed. Defendant’s exceptions of prescription and no cause of action are hereby granted. Plaintiffs are to bear all costs of this appeal.

AFFIRMED.

. From this ruling, Nicholson sought writs in this Court and in the Louisiana Supreme Court, but both applications were denied. 94-2097 (La.App. 4th Cir. 11-3-94), writ denied, 648 So.2d 1343 (La.1995).