821 So.2d 101 (2002)
Janice YOUNG and Beulah Dietch
v.
Albert J. ADOLPH, a/k/a A.J. Adolpf, Frank Adolph and Mark Adolph.
No. 02-CA-67.
Court of Appeal of Louisiana, Fifth Circuit.
May 15, 2002.
*102 Richard J. Tomeny, Jr., Metairie, LA, for Appellants, Janice Young and Beulah Deitch.
William E. Wright, Jr., Margaret L. Sunkel, Deutsch, Kerrigan & Stiles, L.L.P., New Orleans, LA, for Appellees, Albert J. Adolph, a/k/a A.J. Adolf, Frank Adolph and Mark Adolph.
Panel composed of Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
CANNELLA, Judge.
Plaintiffs, Janice Young (Young) and her mother Beulah Dietch (Dietch), appeal from the trial court judgment rendered in favor of the Defendants, Albert J. Adolph (A.J.), Frank Adolph (Frank), and Mark Adolph (Mark) (collectively, the Adolphs), in their suit for damages allegedly suffered because the Defendants breached the fiduciary duty which they owed to Plaintiffs as the owners and officers of the corporation of which Plaintiffs were creditors. For the reasons which follow, we affirm.

FACTS
A.J. was the sole and majority shareholder of three corporations, Automotive *103 Financial Services, Inc. (AFS), in which Plaintiffs had invested, Automotive Casualty Insurance Company (ACIC) and Adolph Enterprises, Inc. d/b/a Automotive Protection Services (APS). AFS was originally incorporated in 1964 under a different name, Algiers Financing Company. However, when A.J. moved the place of business from the Westbank to the Eastbank in 1983, he amended the articles of incorporation and changed the name to AFS. AFS operated as a general and limited consumer finance company. Its primary business changed over the years from general consumer financing to automotive insurance financing and they received over 80% of their business from ACIC. APS was incorporated in 1966 as an insurance agency. ACIC was formed in 1986 and operated as an automobile casualty underwriter.
To help fund the business, AFS opened a line of credit with Transamerica Consumer Receivable Transfer, Inc (Transamerica), a discount company that loans money to consumer finance companies. AFS also issued Certificates of Indebtedness to various people who were loaning money to AFS. The certificates were in the nature of promissory notes providing the amount invested, interest and a due date and commonly referred to as subordinated debentures because the holder or creditor's debt is second or subordinated to other creditors of the company. AFS was not publicly traded and had issued debentures to family and friends of A.J. or people who had heard about it through friends. Plaintiffs were some of those people.
Plaintiffs first dealt with A.J. in 1980, shortly after the death of Young's husband. She testified that her brother-in law, Gerald Young, told her about A.J. and recommended that she invest her money with him because she needed additional income and he was paying a high rate of return. She met A.J. and began investing her money with him. He issued her Certificates of Indebtedness which provided an interest rate and a maturity date. She testified that it was a great investment and that A.J. paid her a higher rate of return than she could have gotten elsewhere. When the debentures matured, she had them rolled over or re-invested. As she earned profits from her business, she invested that money with A.J. also, as did some of her children and Dietch. Young testified that she was not aware of any risks in her investment with A.J. She did not know that the reason the interest was high was because the risks were high. She also stated that she did not know that unlike certificates of deposit from the bank, her investment with A.J. was not federally insured.
Plaintiffs were happy with their investments until about 1991. Young testified that when her son Michael redeemed his investment with AFS, he was told that the Adolphs were getting out of the business. She testified that she asked A.J. about taking her money out and he advised her against it at that time. Her debentures did not mature until 1994. Plaintiffs contend that they attempted to contact A.J. on several occasions throughout 1992 to get their money back, but he would not return their telephone calls.
During the latter part of 1992, A.J. apparently started having problems. On August 24, 1992, the Insurance Commissioner for the State of Louisiana (Commissioner) filed a petition for conservation and injunctive relief against ACIC. A court order was issued directing the Commissioner to take possession and control of the property, records and accounts of ACIC.
On August 28, 1992, several AFS debentures or Certificates of Indebtedness were redeemed, that is, the money was returned *104 to the debenture holders in return for the certificates. These debentures were held by A.J.'s family and close friends. Plaintiffs' debentures were not redeemed at this time. A.J. testified that Plaintiffs' debentures were for more money then he had at that time.
On September 1, 1992, by consent order, ACIC was placed in rehabilitation and the Commissioner was ordered to take control of ACIC and APS. Thereafter, in September of 1992, negotiations took place between the Commissioner and A.J. regarding control of AFS. The Commissioner wanted control of AFS because he considered it essential to the successful operation of ACIC. The Commissioner wanted a voluntary surrender of AFS. A.J. proposed a sale of AFS to ACIC and the offer was rejected by the Commissioner. The Commissioner obtained a license to operate a separate finance company. A.J. contends that these negotiations over AFS indicate an understanding between the parties that AFS was a separate entity from ACIC.
On September 30, 1992, two agreements were confected regarding the payment by AFS of its debts. The first agreement was between Transamerica, AFC, ACIC, by signature of the Commissioner or his representative, and APS. Essentially, it outlined the means by which Transamerica was to be paid first, before ACIC. The agreement acknowledged a debt by AFS to Transamerica in the amount of $1,254,310 and reciprocal debts of AFS to ACIC, in the amount of $935,000, and of ACIC to AFS, in the amount of at least 1 million dollars, although the exact amount was uncertain. The manner of payment of these debts was outlined in detail. The agreement further provided that it should terminate upon the payment in full of Transamerica.
The second agreement, similar in part to the first, was between AFS, ACIC, by signature of the Commission or his representative, A.J., Frank and Mark. It recited the indebtedness of AFS to Transamerica and to ACIC and the reciprocal debt of ACIC to AFS. It provided for the manner of payment to Transamerica and for payment to ACIC in preference to any other disbursements of funds. The agreement provided for office space rental and retention of company vehicles and office furniture by AFS. It was agreed that Transamerica and/or ACIC could place an auditor in AFS to insure the proper handling of all funds. Finally, the agreement provided that upon full payment of Transamerica and ACIC, "all monies received thereafter by AFS shall be the sole property of AFS."
A.J. testified that Transamerica was paid in full within 18 days of the agreement. Then, because of the offsetting debts between AFS and ACIC, he considered ACIC also paid in full. On October 30, 1992, pursuant to instructions by A.J. to the AFS accountants to pay Plaintiffs in full, their Certificates of Indebtedness were redeemed.
Following the payments to Plaintiffs, between November of 1992 and February 1993, A.J. and his sons withdrew approximately 1.3 million dollars from the accounts of AFS. A.J. testified that they did nothing wrong because all creditors had been paid, the company business was winding down, and the company was solvent.
On January 20, 1993, the Commissioner filed a petition and obtained an order placing ACIC in liquidation. On February 3, 1993, the Commissioner filed a petition against AFS and A.J. personally. The petition sought an order declaring AFS to be part of a "single business enterprise" (SBE) with ACIC and APS and sought an injunction against AFS, its officers and directors enjoining them from disposing of *105 the company's property or assets and from transacting business. On June 4, 1993, the trial court held that AFS was part of a SBE with ACIC and APS.
On September 10, 1993, following the determination that AFS was an SBE with ACIC and APS, the Commissioner filed a rule against Plaintiffs seeking to set aside the payments which they received in redemption of their debentures on the basis that they were preferential payments. Plaintiffs hired counsel to defend against the suit and paid him $23,539.06 for his services. Ultimately, on June 24, 1994, Plaintiffs entered into a Compromise and Settlement Agreement with the Commissioner whereby they each agreed to return a portion of the payment that they had received. Young returned $100,000 and Dietch returned $8,400 in full settlement of all claims by the Commissioner.
On May 28, 1999, Plaintiffs filed suit against the Adolphs alleging that the Defendants were liable to them for damages. Young contends that she lost $32,238.66 on the redemption of the debentures, $100,000 that she paid in settlement to the Commissioner, and $23,539 that she paid in attorney fees, plus damages for mental anguish. Dietch contends that she lost $2,688.20 on the redemption of the debentures, $8,400 that she paid in settlement to the Commissioner and damages for mental anguish. Plaintiffs alleged that the Defendants were liable to them under theories of negligence, fraud and breach of fiduciary duty. Plaintiffs further allege that the actions taken by A.J., Frank and Mark were knowing, intentional, fraudulent and, due to the commingling of funds, Plaintiffs are entitled to pierce the corporate veil and collect their damages from the Defendants personally.
Defendants denied any wrongdoing. They contend that Plaintiffs were paid in full when their debentures were redeemed. Further, Defendants argue that the redemption was legal and valid because all other creditors had been paid and the corporation was still solvent. They argue that the Commissioner had no valid cause of action against Plaintiffs for the return of their redemption proceeds and, thus, Defendants should not be liable to Plaintiffs for the money that they gave the Commissioner in settlement of that claim. They also contend that they did not breach any fiduciary duty to Plaintiffs, conducted their business in a legal manner at all times and made certain that Plaintiffs were paid in full before they took any money out of the company. Defendants contend that they cannot be held liable for any actions which they took after Plaintiffs were paid in full. Defendants also filed an exception of prescription to Plaintiffs claims.
Following a hearing on the exception of prescription on February 2, 2000, the trial court granted with prejudice the exception as to all causes of action except that for breach of fiduciary duty.
On May 29, 2001, Plaintiffs' remaining claim was tried. The only witness to testify other than Plaintiffs and Defendants was Timothy Murphy, the accountant for AFS. Thereafter, on July 30, 2001, the trial court rendered judgment, with reasons, in favor of Defendants and against Plaintiffs. In his reasons for judgment, the trial court found that the Plaintiffs did not meet their burden of establishing that the Defendants owed them, as creditors or holders of debentures, any duty or that any duty owed them was breached. The trial court pointed out that the breach which Plaintiffs attempted to prove occurred after the Plaintiffs' debentures had been redeemed and any duty that might have formerly existed was already extinguished. The trial court also found that the Plaintiffs' proof that they were underpaid on the debenture redemption was inadequate. Finally, the *106 trial court found that Plaintiffs' evidence was lacking in their assertion that Defendants are liable to them for the money that they paid to the Commissioner to settle the claims against them. In other words, the trial court simply found that Plaintiffs did not meet the burden of proof necessary to succeed on their cause of action.

ARGUMENT
On appeal, Plaintiffs argue that the law does provide for a fiduciary duty owed by the corporate principals to creditors of the corporation and that the evidence did establish that the Defendants breached their fiduciary duty to Plaintiffs. As proof of the breach and Defendants' liability, Plaintiffs rely primarily on the combination of three facts, the withdrawal of funds by Defendants from the corporation after Plaintiffs' debentures had been redeemed, the trial court judgment, affirmed on appeal, Brown v. Automotive Casualty Insurance Company, 93-2169 (La.App. 1st Cir 10/7/94), 644 So.2d 723, holding that AFS was an SBE with ACIC, and Plaintiffs' payment of over $100,000 in settlement of the action brought against them by the Commissioner. In other words, Plaintiffs argue that it was the withdrawal of those funds that led the Commissioner to bring the SBE action. Then, because of the favorable SBE judgment, the Commissioner was prompted to bring the action against Plaintiffs for return of the redemption proceeds. Then, Plaintiffs argue that, because of those events, they were forced to reach a settlement agreement with the Commissioner to ensure the safety of the remainder of their redemption proceeds. Thus, Plaintiffs argue that Defendants should be liable to them for their loss because they would not have had to enter the settlement with the Commissioner for over $100,000 if Defendants had not taken the money from AFS, notwithstanding that they did so after all of the creditors, including themselves, had been paid.
For Plaintiffs to succeed in holding the Defendants liable to them for the damages which they seek, they must prove breach of a fiduciary duty that was owed to them and, under an "alter ego" or "piercing of the corporate veil" theory, that Defendants should be held personally liable. While Plaintiffs are correct that our courts have recognized a fiduciary duty by a corporation towards creditors of that corporation, personal liability by the principals of the corporation for breach of that duty does not lie, absent proof of fraud in the actions taken by the principals. Dutton & Vaughan, Inc. v. Spurney, 600 So.2d 693 (La.App. 4th Cir.1992).
Some breaches of a fiduciary are classified as delictual, while others are ex contractu. Pineda v. Ruppel, 94-136 (La. App. 5th Cir.6/28/94), 639 So.2d 858. Pineda implies that the two categories are mutually exclusive. Courts must consider the underlying claim to determine if the action is indeed one for breach of fiduciary duty, governed by the 10 year prescriptive period, or merely a suit against a fiduciary for negligence which is governed by the one year prescriptive period. Beckstrom v. Parnell, 97-1200 (La.App. 1st Cir.5/15/98), 714 So.2d 188, on rehearing, 97-1200 (La.App. 1st Cir.11/6/98), 730 So.2d 942. The distinction is that ex contractu breaches arise from the breach of a special obligation between the parties and ex delicto breaches from the violation of a general duty. The necessary implication of Beckstrom is that a fiduciary's simple negligence is treated as a delictual offense, while deliberate offenses, such as fraud, are treated as personal actions. This permits greater accountability for deliberate acts, but also requires a higher burden of proof. Dela Vergne v. Dela Vergne, 99-0364 (La.App. 4th Cir.11/17/99), 745 So.2d 1271. Thus, Plaintiffs' sole remaining *107 cause of action herein, following the granting of the Defendants' prescription exception, requires proof of the intentional act of fraud in the special relationship that existed between the parties.
Corporations are distinct legal entities, separate from the individuals who comprise them. La. R.S. 12:219; La. R.S. 12:93. Thus, if the officers and directors do not purport to bind themselves individually, they do not incur personal liability for the debts of the corporation. An exception to this rule arises when an officer or director, acting through the corporation, defrauds or deceives a third party. Nicholson Management & Consultants, Inc. v. Bergman, 96-0557 (La.App. 4th Cir., 9/25/96), 681 So.2d 471; Dutton & Vaughan, Inc. v. Spurney, supra. The corporate creditor has the burden of proving that the corporate agent is liable for corporate debts. Nicholson Management & Consultants, Inc., supra.
Applying these precepts to the facts before us, we find no manifest error in the trial court conclusion that Plaintiffs did not meet their burden of proof. Plaintiffs' theory of recovery, and the facts relied on to support it, simply do not support a finding of personal liability on the part of the Defendants for reimbursement of the funds which Plaintiffs paid to the Commissioner to settle the lawsuit against them or the attorney fees expended in the process.
There is simply no showing in this record of an intentional act or fraudulent conduct by Defendants in their relationship with or duty owed to the Plaintiffs, who were creditors of the corporation. Plaintiffs chose to invest in AFS because of the high rate of interest which AFS paid on the loan investment. This was not federally insured, but a high risk investment. Young admitted in her testimony that she chose to invest with AFS instead of buying certificates of deposit at a bank because she could not get that kind of return with a CD. With high returns come high risk. So, any duty owed by Defendants to Plaintiffs must be understood in the context of the high risk investment that Plaintiffs chose. Thus, Defendants owed Plaintiffs the duty to not defraud them out of their investment, and this they did not do. Failure of the return of the investment was not the problem. Plaintiffs were fully paid on their investment.[1] Adolph testified repeatedly that he made sure that all of the debenture holders were paid in full and that he made certain that all creditors were repaid. There is simply no showing of fraudulent conduct by Defendants in their relationship with Plaintiffs.
Rather, Plaintiffs rest their case on the SBE finding and the actions by Defendants after the Plaintiffs were fully paid, in disbursing funds of AFS to themselves. While we are not unsympathetic to Plaintiffs' plight and, pretermitting for the sake of the argument whether Plaintiffs can rely on the SBE finding where they were not a party to that suit, we simply do not find in Defendants' conduct the fraud necessary to mandate a finding of their liability.
A.J. had three separate corporations, or at least he thought that he did. And from the beginning, when the Commissioner filed a petition for conservation, AFS was treated by the Commissioner as a separate corporation. The commissioner, as rehabilitator of ACIC, entered into a contract with AFS delineating the manner of debt payment by AFS and evidencing recognition *108 by the Commissioner that AFS was separate from ACIC. In the agreement, it was provided that A.J. had to pay Transamerica first, then ACIC. The agreement further provided that, following the payment of ACIC, A.J. could disburse the proceeds in any manner which he saw fit. A.J. testified that he paid Transamerica and ACIC and then he paid every one of his corporate creditors, including Plaintiffs, in full, before he removed any money from the company. It was only after the payment of all creditors, according to the agreement, that he disbursed the remaining funds to himself and his sons. He testified that he was completely surprised when the Commissioner brought the SBE proceedings. Thus, we find, based on the record before us, that Plaintiffs have simply not met their burden of proving fraudulent conduct on the part of the Defendants personally in their relationship with or any duty owed to the Plaintiffs.
Moreover, to succeed, Plaintiffs had to prove that the Commissioner would have prevailed in his action against them for the return of the money that they were paid when their certificates of indebtedness with AFS were redeemed. This record is void of any such proof. To the contrary, Young testified that she had good defenses to the action, but that it became apparent that the trial judge in that suit was a "rubber stamp" judge who was going to do whatever the Commissioner wanted. While we fully understand the difficult position that Plaintiffs faced, that does not make the Defendants personally responsible for their loss.
The combination of the SBE finding, the claim by the Commissioner against Plaintiffs and their settlement of the Commissioner's claim, is simply not enough to establish the liability of Defendants in favor of Plaintiffs for the money that Plaintiffs chose to pay to settle the suit with the Commissioner. We realize that Plaintiffs settled the claim to avoid the risk of losing all of their redemption proceeds. But, without proof that the Commissioner would have ultimately prevailed, liability cannot rest in the Defendants.
It clearly appears from the record that the Defendants may have been negligent in the handling of their business or the commingling of funds between the corporations that they owned. However, negligence is less than a breach of the fiduciary duty owed by Defendants to the Plaintiffs as creditors. Further, as held in the pre-trial ruling, granting the Defendants' prescription exception, any delictual claims, like negligence, have long since prescribed, as did Plaintiffs' other causes of action. Plaintiffs' claims under La. R.S. 12:226(D), for the unlawful distribution or payment of assets of the corporation that would have covered the disbursement of funds to Defendants that took place after the redemption of Plaintiffs debentures, have prescribed. And likewise, Plaintiffs' claims that they were underpaid in the debenture redemption have prescribed. This ruling was not appealed and is final.
Thus, we conclude, any viable claim that Plaintiffs may have had against the Defendants has prescribed. The burden of proof in Plaintiffs' remaining claim for breach of fiduciary duty, that went to trial, was simply not carried.
Accordingly, based on the foregoing, we affirm the judgment of the trial court in favor of Defendants and against Plaintiffs. Costs of appeal are assessed against Plaintiffs.
AFFIRMED.
NOTES
[1] While there is some discrepancy concerning the exact amount that Plaintiffs were paid when the debentures were redeemed, Plaintiffs made no claim for any shortage on that payment for almost seven years. As was held by the trial court, this claim has prescribed.