574 So.2d 412 (1991)
A. Paul FULLER and/or United Talent Associates, Inc.
v.
William L. BARATTINI.
No. 90-CA-622.
Court of Appeal of Louisiana, Fifth Circuit.
January 16, 1991.
*413 Harry Burglass, Kenner, for plaintiff-appellee.
Gerald Wasserman, Metairie, for defendant-appellant.
J.B. Kiefer, Sherry W. Schneider, Dean R. Yellin, Metairie, for defendant-appellee.
Before GAUDIN, DUFRESNE and WICKER, JJ.
DUFRESNE, Judge.
This dispute arose from a commercial lease signed by A. Paul Fuller, lessee, and William Barattini, lessor, on October 21, 1982. After trial on the merits, the trial judge found that Fuller had entered into the lease agreement through errors as to the principal cause of the lease, brought about by misrepresentations made by Barattini. He therefore rescinded the lease because of a vice of consent and awarded Fuller damages of some $59,000, for labor and materials used to remodel the premises before the errors were discovered. He denied attorney fees, however, because he found that Barattini's misrepresentations did not rise to the level of fraud, but were rather the result of overzealousness in concluding the lease.
Barattini now appeals this judgment alleging four grounds for relief:
1. The action based on the alleged misrepresentations sounded in tort, and thus *414 this claim had prescribed when suit was filed three years after those events;
2. The lease, by its own terms, became effective on the date the permits were issued, and the lessor was entitled to rent from that date until the lessee vacated the premises in 1988;
3. It was error to allow parole evidence at trial to vary the terms of the written lease; and
4. The lease agreement precluded an award of damages beyond return of rent paid.
Fuller answers the appeal, contending that the trial judge failed to award damages for certain items claimed because of insufficient proof, even though sufficient evidence was in fact presented to establish these items, as well as for attorney fees because of fraud on Barattini's part.
For the following reasons, we affirm the judgment of the trial court.
In August of 1982, Fuller and a business associate, Steve Memory, began lease negotiations with Barattini for a property in a small shopping center at 3116 Arnoult Road in Jefferson Parish. Fuller's plan was to open a lounge featuring an all male troupe of dancers, and targeting a predominately women's audience. Fuller testified, and was corroborated by Memory, that one of the major requisites for a potential location was that it have sufficient parking, and the location being considered did not appear to comport with this need. Barattini assured him however, that he also owned a parking area adjacent to the building, and had a lease in effect on yet another parking lot across the street, both of which would be available for use in the evenings.
A second significant area of discussion involved the availability of all necessary permits. Fuller testified that this problem was discussed prior to signing the lease and that Barattini not only assured him that there would be no problems, but also that he himself would see to the permits through his familiarity with various parish officials.
When the lease was signed on October 21, 1982, it was silent as to both the adjacent parking spaces, and the responsibility for obtaining the permits. It did contain a clause stating that the lease would not go into effect until all proper permits were issued by the Parish. Nonetheless, Fuller began extensive remodeling work on the club in late October. He testified that he began the work without any permits because Barattini again assured him after the lease was signed that he would take care of them, and urged him to go forward without them. Although Barattini stated that he only indicated to Fuller that he would help him get the permits, the testimony of a number of other people working on the job corroborated Fuller's version. Michael Stoffer, a Dallas, Texas contractor who was running the job, stated that on at least six occasions between late October and early December, when the work was almost completed, he spoke directly to Barattini about when the permits would be forthcoming. On each occasion he was reassured that the permits would be issued, and was also told by Barattini that he should not attempt to get the permits himself because that would only complicate matters. B. Vonn, a lighting specialist who was installing the light system, gave similar testimony as to at least two conversations about permits with Barattini. These workmen, as well as Fuller, also testified that during the job all workmen were told by Barattini to park in the adjacent lot or in the one across the street so as not to take up spaces used by customers of other businesses in the shopping center.
The evidence shows that this entire matter came to a head in late November or early December, when Fuller, Memory and Stoffer learned that there was a problem with getting the permits. Fuller stated that he and Memory confronted Barattini in early December and demanded the permits. When they were not produced, two men went to the parish permits office where they learned for the first time that no permits could be issued because of insufficient parking for the proposed use at the location. At that point Fuller began the process of attempting to get a zoning approval or variance from the zoning board, and eventually had to seek relief in *415 the courts. During the course of administrative hearings, Fuller learned for the first time that Barattini did not own the adjacent lot. It further appears, however, at the time the lease was signed that Barattini was attempting to purchase the adjacent lot and apparently had informal permission to use the lot across the street. (A formal lease of this latter lot was signed on January 1, 1983.) Nonetheless, when the permits were eventually obtained through court action in January 1985, the adjacent lot was not available to Fuller for parking.
Fuller's further testimony was that because of the money already spent on the club and litigation, he was still prepared to open for business in early 1985, rather than seek rescission of the lease. However, at that point Barattini demanded rent of $6,000 per month for the more than two years that the club had been closed due to the permits dispute, even though the lease provided that it would not be effective until issuance of permits by the parish. When negotiations on this point failed, Fuller filed the present suit.
On these facts the trial judge concluded that Barattini had misled Fuller into believing that procurement of the permits would be a simple matter which he would see to, and that there was ample parking. He further concluded that these two factors were essential to Fuller's consent to the lease and because of errors induced by Barattini on both points, this consent was vitiated. He therefore rescinded the lease and awarded Fuller damages for construction expenses incurred between October and December of 1982.
Two cases involving facts similar to those before us are Marcello v. Bussiere, 284 So.2d 892 (La. 1973), and Guaranty Savings Assurance Co. v. Uddo, 386 So.2d 670 (La.App. 1st Cir.1980). Marcello involved the sale-lease of a bar-lounge business. The defendants purchased the equipment and furnishings of a lounge and leased the premises. After doing some remodeling, they discovered that a liquor permit could not be obtained for the business. The vendor-lessor brought suit for past due rent, and the purchasers reconvened to rescind the sale and lease, and for recovery of money spent in remodeling. The court ruled that while no fraud had been shown, the sale-lease nonetheless had to be set aside because the inability of the purchasers to obtain the license went to their principle motive in entering the agreement, and that the vendor-lessor knew of this motive. The court further indicated that the costs of renovation would have been recoverable had the purchasers presented sufficient proof of this claim. In Guaranty Savings Assurance Co., a contract of lease was similarly rescinded because the lessee was unable to obtain proper liquor permits. The court noted that the lessor knew that the lessee proposed to open a lounge at the premises, and also knew that the zoning of the building was inconsistent with this use. While rejecting allegations of fraud on the part of the lessor, the court nonetheless rescinded the lease and awarded damages for expenses incurred by the lessee in anticipation of opening the business. Although both cases were decided before the 1984 revisions of the Civil Code, the prior articles cited in those cases are now generally incorporated into Articles 1948-1952 (1984).
On the facts of the present case, there is no question that the permits and additional parking were essential elements of Fuller's consent to the lease, and that errors as to these factors vitiated his consent, La.Civ.Code arts.1948-1950. The trial judge thus properly rescinded the lease and awarded damages for remodeling costs expended by Fuller.
It is not clear whether Barattini has actually asserted here that it was error to rescind the lease, except that his second assignment of error alleges that he was entitled to rent under the lease from the date the permits were obtained, and his fourth asserts that the agreement limits Fuller's recovery to return of rent paid. In any case, since we have determined that the trial judge properly concluded that the lease was defective for a vice of consent and was properly rescinded, Barattini's reliance on the terms of the lease as controlling here is simply without foundation. We *416 further note in this regard La.Civ.Code art. 1951, which provides that a party alleging error in the formation of a contract cannot set the agreement aside if the other party is willing to perform the contract as actually intended by the party in error. Here, Fuller was willing to go forward with the lease in January 1985, when the permits were finally issued, in spite of the over two years delay and the unavailability of at least one of the two extra parking lots. However, rather than accepting this resolution, Barattini instead demanded rent for the over two years delay in issuance of the permits, even though the lease stated explicitly that it would not be valid until all proper permits had been obtained. It was only after this demand was made by Barattini that Fuller filed suit to rescind the lease, and prevailed. In these circumstances, Barattini simply cannot urge relief under the terms of the rescinded lease at issue here.
The remaining two errors urged by Barattini are also without merit. In the first, he argues that his misrepresentations were delictual obligations, and therefore the exception of the one year prescription was properly overruled by the court. This is not to say that a delictual action could not lie on facts similar to those of this case, an issue which we do not resolve here. It is rather only to say that Fuller advanced a cause based on contract, which had clearly not prescribed when suit was filed.
As to Barattini's last assertion, that parole evidence was improperly admitted to vary the terms of a writing, we need only state the often repeated rule that parole evidence is admissible when a vice of consent in the formation of a contract is alleged, La.Civ.Code, art. 1848. We also point out that parole evidence is also admissible to establish an additional oral agreement between parties to a written contract, Great Southern Homes, Inc. v. Holten, 460 So.2d 662 (La.App. 1st Cir.1984). Here, there was overwhelming evidence to show that after the lease was signed Barattini not only agreed to procure the permits, but also cautioned Fuller and various workmen that if they attempted to get the permits on their own they would only complicate the process. Parole evidence was thus clearly admissible to establish this subsequent agreement.
Fuller has answered the appeal, and first alleges that the trial judge erred in not finding that Barattini had committed fraud, thus making him liable for attorney fees. Fraud is defined in La.Civ.Code, art. 1953, as a "misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other". This article requires not only that there be a misrepresentation, but also that the misrepresentation be made with the "intention" of gaining an unjust advantage.
In this case, the trial judge found that Barattini had no intention of gaining any unjust advantage over Fuller during negotiations for the lease or afterwards, but rather misjudged his abilities to accomplish what he promised. The record indicates that Barattini honestly believed that through his political contacts he could readily acquire the needed permits. Based on this assumption he urged Fuller to go forward without proper permits and dissuaded him from attempting to apply directly to the parish for those permits. In none of this did he intend to take advantage of Fuller. As to the additional parking lots, the evidence also shows that at the time the lease was signed Barattini had informal permission to use the lot across the street, which permission matured into a written lease on January 1, 1983. As to the adjoining lot, there was also some indication that he was negotiating for the purchase of that property when the permit problem arose. On this evidence we cannot say that the trial judge was manifestly wrong in deciding that Barattini did not act with the intention of either obtaining some unjust advantage of Fuller, or causing him loss or inconvience.
Fuller's final allegation here is that the trial judge failed to award damages for several items which were clearly established by his evidence. The most substantial of these was a claim for lost profits. The general rule as to such claims is that the plaintiff must prove the loss with reasonable certainty and an award cannot be based upon speculation or conjecture, Moss *417 v. Guarisco, 459 So.2d 1 (La.App. 1st Cir. 1984). Fuller estimated that he expected to earn some $150,000 per year for the venture, but there was no corroboration of this estimate, and it is clearly nothing more than conjecture. Similarly, there was testimony from George Laib, a television marketing agent, that he was negotiating with a television network for a program featuring the dancers at the club, which may have resulted in a $100,000 profit. However, no final contracts had been signed and there was thus no reasonable certainty that this project would have gone forward. The trial judge thus correctly determined that this evidence was too speculative to establish these items with reasonable certainty.
As to damages for construction costs, plaintiff submitted original invoices and checks showing a total of $46,856.50, all of which was awarded at trial. Although copies of a number of other documents were also submitted, these copies were not deemed sufficient to establish further damages by the trial judge. We find no error in this determination.
The final award of $12,000 made by the trial judge was for return of rent previously paid to Barattini under the rescinded lease, making a total damage award of $58,856.50.
For the foregoing reasons, that award is hereby affirmed.

AFFIRMED