# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30742

CEDAR LODGE PLANTATION, L.L.C.,

United States Court of Appeals
Fifth Circuit

**FILED**

October 10, 2018

Lyle W. Cayce
Clerk

Plaintiff - Appellant

v.

CSHV FAIRWAY VIEW I, L.L.C.; CSHV FAIRWAY VIEW II, L.L.C.;
CAMPUS ADVANTAGE, INCORPORATED; SEWER TREATMENT
SPECIALISTS, L.L.C.,

Defendants - Appellees

Appeal from the United States District Court
for the Middle District of Louisiana
USDC 3:13-CV-129

Before DAVIS, JONES, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

Plaintiff, Cedar Lodge Plantation, L.L.C. ("Cedar Lodge"), challenges the district court's summary judgments in favor of defendants dismissing its action for damages and injunctive relief. Plaintiff's claims arise from the alleged discharge of sewage contaminants into its pond by defendant's apartment complex that adjoined plaintiff's property. As explained more fully below, we

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30742

find issues of material fact exist on the apartment owner's liability to plaintiff based on plaintiff's negligence and nuisance theories. We also disagree with the district court's ruling excluding certain testimony from plaintiff's expert, and we disagree with some of the district court's conclusions on damages. We therefore VACATE, in part, and AFFIRM, in part, the judgment and REMAND the case for further proceedings consistent with this opinion.

## I. Background

Cedar Lodge owns property directly adjacent to the Fairway View apartments ("Fairway View") in Baton Rouge, Louisiana. A pond on Cedar Lodge's property receives runoff from a drainage ditch located on Fairway View's property. Cedar Lodge's member and manager, Phillips Witter ("Witter"), observed in December 2012 that the pond was bright green and cloudy, smelled foul, and "appeared dead." Testing of the pond by Cedar Lodge that month showed that it contained fecal coliform, bacteria found in sewage, at a level of more than five times the state standard for primary contact recreation, *i.e.* swimming. Cedar Lodge contacted Fairway View about the sewage problem but asserts that Fairway View did nothing in response.

When Witter discovered the pond's condition, Cedar Lodge was in talks with Harvest Partners, Ltd. ("Harvest Partners") to develop the Cedar Lodge property into a residential and commercial community. Those talks subsequently terminated, and the proposed development never came to fruition.

In January 2013, Cedar Lodge filed suit against the owners and manager of Fairway View[1] and Sewer Treatment Specialists, L.L.C. ("STS"), which operates and maintains Fairway View's wastewater lift station and

---

[1] Defendants CSHV Fairway View I, L.L.C. and CSHV Fairway View II, L.L.C. own the apartments, and Campus Advantage, Inc. manages the apartments.

## No. 17-30742

wastewater treatment system under a contract with Fairway View.[2]  Cedar Lodge alleged that the negligence of Fairway View and STS resulted in the discharge of harmful or hazardous substances, pollutants, or contaminants, including raw sewage, onto Cedar Lodge's property.  Cedar Lodge further alleged that the resulting contamination of its waterways, groundwater, and soil required remediation and caused the property to be unsuitable for use, development, or sale. Cedar Lodge sought damages for remediation and repair of its property, diminution in property value, loss of use and enjoyment of its property, and loss of a business opportunity and profits from the proposed development with Harvest Partners.  The district court allowed Cedar Lodge to add a claim for nuisance under Louisiana Civil Code article 667.  The court further noted that it would not limit the availability of any form of recovery, including injunctive relief, to which Cedar Lodge could prove it was entitled.

Testing of the pond focused on fecal coliform and heavy metals, which are found in household cleaners and can also indicate sewage. The most recent testing of the pond in March 2015 showed that none of the detected heavy metal concentrations exceeded the soil screening standards under Louisiana Department of Environmental Quality's Risk Evaluation / Corrective Action Program ("RECAP").

Fairway View and STS filed motions for summary judgment seeking dismissal of Cedar Lodge's claims.  The district court granted STS's motion, finding that while STS owed Cedar Lodge a duty to exercise reasonable care in maintaining the lift station, there was no evidence that STS breached that duty.

---

[2] The suit was filed in Louisiana state court and subsequently removed to federal district court.

3

No. 17-30742

The district court also granted summary judgment in favor of Fairway View. The only element of the negligence and nuisance claims that the district court considered was the various damage items the plaintiff was claiming: remediation (to reduce contaminant concentrations below regulatory standards) and restoration (to restore the property to its former condition). As discussed below, the court found there was insufficient evidence that any damage occurred to create an issue of fact, and on this basis granted summary judgment for Fairway View.

The district court discussed the various damage claims in some detail. As to remediation, the district court found that the evidence showed the pond did not have levels of fecal coliform or heavy metals that exceeded regulatory standards. As to restoration, the district court found that Witter's testimony about the property's deterioration did not prove it required restoration. In addition, the district court granted summary judgment as to Cedar Lodge's claim for its lost business opportunity, reasoning that Witter alone caused the breakdown in negotiations of the proposed development.

Fairway View also filed motions in limine seeking to exclude Cedar Lodge's environmental expert, Suresh Sharma ("Sharma"), from offering any expert testimony, or from testifying about federal standards or the trend analyses he conducted to assess the directional flow of the contaminants. The district court granted this motion and excluded Sharma's testimony.

In addition, Fairway View filed a motion in limine seeking to exclude evidence related to the cost to drain the pond,[3] which the district court granted in light of its rulings disqualifying Sharma from testifying as an expert witness and dismissing Cedar Lodge's restoration claim.

---

[3] As discussed below, Sharma testified that the pond needed to be drained for further testing of the pond bed, and Cedar Lodge argued that the defendants should be required to bear this cost.

4

No. 17-30742

On September 6, 2017, the district court rendered a final take nothing judgment in favor of the defendants. Cedar Lodge timely filed a notice of appeal disputing the district court's rulings.

## II. Expert Testimony

We review the exclusion of expert witness testimony for an abuse of discretion and sustain the district court's rulings unless they are "manifestly erroneous."[4] Federal Rule of Evidence 702 permits opinion testimony from a witness "qualified as an expert by knowledge, skill, experience, training, or education" if the expert's knowledge will assist the trier of fact and (1) "the testimony is based on sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the expert has reliably applied the principles and methods to the facts of the case."[5]

In *Daubert*, the Supreme Court tasked trial judges with ensuring the relevancy and reliability of all expert scientific testimony.[6] Such testimony must be grounded "in the methods and procedures of science" and "supported by appropriate validation–*i.e.,* 'good grounds,' based on what is known."[7] The focus of the inquiry under Rule 702 is on the principles and methodology that underlie the testimony.[8] The court is to assess "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue."[9] "A lack of specialization should generally go to the weight of the evidence

---

[4] *United States v. Wen Chyu Liu*, 716 F.3d 159, 167 (5th Cir. 2013) (quoting *United States v. Valencia*, 600 F.3d 389, 423 (5th Cir. 2010)).

[5] FED. R. EVID. 702.

[6] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

[7] *Id.* at 590.

[8] *Id.* at 594-95.

[9] *Id.* at 592-93.

rather than its admissibility," and "an expert witness is not strictly confined to his area of practice, but may testify concerning related applications."[10]

Here, the district court found that Cedar Lodge's environmental expert, Suresh Sharma, was not qualified to offer reliable expert testimony because his experience was related to the resolution of hazardous waste matters for commercial and industrial facilities, rather than sewerage systems for apartment complexes or multi-family residential communities.

Sharma has extensive experience in analysis and evaluation of environmental contaminants, the area in which he was offered as an expert, including experience working on sewage systems for residential neighborhood communities. His lack of specialization in sewage facilities for multi-family residential units like those in this case does not render his testimony unreliable. We find that the district court abused its discretion in excluding Sharma's testimony.

The district court also abused its discretion in excluding Sharma's testimony regarding his trend analyses. The district court found this testimony misleading because Sharma only plotted some of the data points from the testing of the pond, which indicated a steady decline moving away from Fairway View, but some of the omitted data points were inconsistent with this trend. We find that this critique of Sharma's method does not justify excluding the trend analysis testimony entirely. Rather, this question as to the basis for Sharma's opinion is fodder for cross-examination, "affect[s] the weight to be assigned that opinion rather than its admissibility[,] and should be left for the jury's consideration."[11]

---

[10] *Wen Chyu Liu*, 716 F.3d at 168-69 (quoting *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991)).

[11] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) (citation omitted).

No. 17-30742

However, the district court's exclusion of Sharma's testimony on federal Environmental Protection Agency standards, Toxicity Characteristic Leaching Procedure ("TCLP"), was not an abuse of discretion. In his expert report, Sharma compared the pond test results to the regulatory standards set by the Louisiana Department of Environmental Quality, RECAP. But in Sharma's deposition, he testified that TCLP standards should apply instead. Yet Sharma failed to complete the TCLP process or obtain final results. The district court found that this testimony was unreliable, would be misleading, and would invite speculation by the jury because Sharma did not complete the TCLP process. We agree with the district court that because of this failure, any testimony about the process would be misleading and invite speculation.[12] Sharma cannot be said to have "reliably applied the principles and methods to the facts of the case"[13] because he did not apply the principles and methods in the first place. We therefore vacate the district court's ruling excluding Sharma's testimony, except with respect to his opinions regarding TCLP.

## III. Liability

This court reviews a district court's grant of a motion for summary judgment de novo.[14] Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] In other words, the court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in

---

[12] *See Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 198 (5th Cir. 1996) ("In the absence of scientifically valid reasoning, methodology and evidence supporting these experts' opinions, the district court properly excluded them.").

[13] FED. R. EVID. 702(d).

[14] *Deshotel v. Wal-Mart La., L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017) (citation omitted).

[15] FED. R. CIV. P. 56(a).

7

favor of either party," or "whether the evidence . . . is so one-sided that one party must prevail as a matter of law."[16]   In reviewing a grant of summary judgment, the court must "construe all facts and inferences in favor of the nonmoving party."[17]

Louisiana's substantive law applies in this case,[18] and we review the district court's determination of Louisiana law de novo.[19]   In determining Louisiana law, we first look to legislation,[20] then to final decisions of the Louisiana Supreme Court.[21]   To the extent the supreme court has not resolved an issue, then we "must make an 'Erie guess' and 'determine as best [we] can' what the Louisiana Supreme Court would decide."[22]   To inform our *Erie* guess, we "may look to the decisions of intermediate appellate state courts," which provide "a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."[23]

Under Louisiana law, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."[24]   In the case of damage to property, the negligent party is obligated "to restore the property as nearly as possible to the state it was in immediately preceding the

---

[16] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986).

[17] *Deshotel*, 850 F.3d at 745 (citing *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)).

[18] Plaintiff originally filed this lawsuit as a class action, and Defendants removed the case under the Class Action Fairness Act, which is based on diversity jurisdiction.  28 U.S.C. § 1332(d)(2).

[19] *See, e.g., Learmonth v. Sears, Roebuck & Co.*, 710 F.3d 249, 258 (5th Cir. 2013) (citations omitted).

[20] LA. CIV. CODE art. 1.

[21] *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000) (citation omitted).

[22] *Id.* (citation omitted) (quoting *Labiche v. Legal Sec. Life Ins. Co.*, 31 F.3d 350, 351 (5th Cir. 1994)).

[23] *Id.* (citation omitted) (quoting *Labiche,* 31 F.3d at 351).

[24] LA. CIV. CODE art. 2315.

damage."[25]  Louisiana law is clear that negligently allowing sewage to drain onto another person's property entitles the landowner to relief, including, where applicable, damages and injunctive relief.[26]

Upon our de novo review, we conclude that the district court erred in granting summary judgment to Fairway View.  Specifically, genuine disputes as to material fact exist regarding Cedar Lodge's claims for negligence and nuisance, including whether Cedar Lodge has suffered damage.  Therefore, these claims are remanded to the district court.

Fairway View makes much of the fact that contaminant levels in the pond did not exceed regulatory standards during the most recent testing of the pond.  But regulatory standards do not establish the requirements for recovery by one private party against another for property damage.[27]  Rather, the Louisiana Civil Code provides much broader relief, through claims for negligence and nuisance, to a landowner whose neighbor damages his property.[28]  Defendant has cited no authority for the proposition that plaintiff cannot state a claim for allowing contaminants to come onto his property unless those contaminants exceed state regulatory standards, and we have found none.  In any event, Sharma has stated that the coliform levels spike

---

[25] *Roman Catholic Church of Archdiocese of New Orleans v. La. Gas Serv. Co.*, 618 So. 2d 874, 876 (La. 1993) (quoting *Coleman v. Victor*, 326 So. 2d 344, 346 (La. 1976)).

[26] *See Smith v. Cutts*, 99-253, pp. 7-8, 17 (La. App. 3 Cir. 3/15/00); 759 So. 2d 851, 855-56, 860.  Cedar Lodge contacted Fairway View about the sewage problem but asserts that Fairway View did nothing in response.

[27] In fact, LDEQ specifically notes in the introduction to RECAP that the program "does not authorize any injury to private or public property . . . or any invasion of personal rights . . . and does not authorize the migration of [Constituents of Concern] offsite to adjacent property."

[28] LA. CIV. CODE arts. 667 & 2315; *Cutts*, 99-253, pp. 7-8, 17; 759 So. 2d at 855-56, 860. To be entitled to damages for the cost of restoration, the plaintiff must only demonstrate damage that worsens the condition of the property.  *See Roman Catholic Church*, 618 So. 2d at 876.

when sewage is released, but the levels fall quickly as the bacteria die off but rise again upon further release.

Under the Louisiana Civil Code, a property owner has a nuisance claim for damages against his neighbor who deprives him of the use of his property or causes damage to him.[29]  A nuisance claim requires a showing that the neighbor (1) "knew or, in the exercise of reasonable care, should have known that his works would cause damage," (2) "the damage could have been prevented by the exercise of reasonable care," and (3) "he failed to exercise such reasonable care."[30]  Louisiana courts have held that for a plaintiff to recover under this article, he must show that the neighbor's use causes damage to him or "interfere[s] substantially with the enjoyment of [his] property."[31]  This requires the court "to determine the reasonableness of the conduct in light of the circumstances," including considering "factors such as the character of the neighborhood, the degree of intrusion and the effect of the activity on the health and safety of the neighbors."[32]  The illegal discharge of foul-smelling sewage effluent onto a neighbor's property constitutes a nuisance,[33] which may entitle the injured landowner to damages and injunctive relief.[34]

In this case, Witter observed in December 2012 that the pond was bright green and cloudy, smelled foul, and "appeared dead," while it was previously a "healthy" pond with clear water, various wildlife, and no foul smell.[35]  Testing

---

[29] LA. CIV. CODE art. 667.

[30] *Id.*

[31] *Badke v. USA Speedway, LLC*, 49,060, p. 15 (La. App. 2 Cir. 5/14/14); 139 So. 3d 1117, 1126.

[32] *Id.* at p. 16; 139 So. 3d at 1126 (citations omitted).

[33] *See Dwyer v. Smith*, 546 So. 2d 895, 897 (La. App. 1 Cir. 1989).

[34] *See Smith v. Livingston Par. Police Jury*, 423 So. 2d 5, 8 (La. App. 1 Cir. 1982).

[35] We reject Fairway View's argument that Witter's affidavit is insufficient because it is self-serving.  This court has explained that "merely claiming that the evidence is self-serving does not mean we cannot consider it or that it is insufficient. Much evidence is self-serving and, to an extent, conclusional." *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 513 (5th Cir. 1999), *superseded on other grounds by* FED. R. EVID. 103(a).  Further, "[a]ffidavits

of the pond by Cedar Lodge in December 2012 showed that it contained fecal coliform at a level of more than five times the state standard for primary contact recreation.  In addition, Fairway View resident Jeffrey Spurlock stated that he witnessed the discharge of sewage from a manhole into the concrete ditch on the Fairway View property in 2013 or 2014 and in 2015.

Plaintiff's expert Sharma testified in deposition that the pond must be drained to evaluate damage to the pond bed because he would expect that sewage discharges have settled to the bottom.  And defense expert Alexander Sheffield agreed that, after fecal coliform in a sanitary sewer overflow dies, human waste and other flushed products remain.  Therefore, genuine issues of material fact preclude summary judgment in favor of Fairway View on Cedar Lodge's negligence claim for the provable damages.

On appeal, Cedar Lodge argues that the district court erred in entering a judgment dismissing all of its claims without addressing its nuisance claim.  Fairway View responds that the district court's summary judgment ruling encompassed the nuisance claim.  Regardless, issues of fact preclude summary judgment on plaintiff's nuisance claim as well as plaintiff's negligence claim.  We therefore vacate the summary judgment grant on both liability theories and remand for further proceedings on those claims.

As to the summary judgment in favor of STS, we affirm.  Although it is true that Louisiana law imposes on repairmen "a duty of reasonable care,

---

or declarations . . . that set forth only conclusory and unsupported assertions are sometimes described disparagingly as 'self-serving' affidavits, as if the 'self-serving' nature of a document renders it automatically insufficient." *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 441 n.7 (5th Cir. 2013) (quoting 11 MOORE'S FEDERAL PRACTICE – CIVIL § 56.94[3] (3d ed. 2013)).  However, Witter's affidavit is entitled to consideration on summary judgment and is not excluded because of his interest in this case.  "[T]here is nothing wrong with self-serving affidavits and declarations, provided they are supported by the facts in the record[.]" *Id.* (second alteration in original) (quoting 11 MOORE'S FEDERAL PRACTICE – CIVIL § 56.94[3] (3d ed. 2013)).  Therefore, though self-serving, Witter's affidavit is evidence, is supported by the pond test results and Spurlock's affidavit, and can be considered.

inspection and workmanlike performance of repairs,"[36] Cedar Lodge has failed to show any specific work STS should have performed that was authorized by Fairway View, the owner of the wastewater lift station and treatment system. In fact, plaintiff's expert opined that it was Fairway View's, not STS's, responsibility to perform the "complete replacement" of the system that would be required to permanently repair its defects. In the absence of a showing that STS failed to perform work that Fairway View authorized it to perform, there is no genuine issue of material fact on plaintiff's negligence claim against STS.[37] Therefore, summary judgment in STS's favor was proper.

## IV. Damages

Should the jury find liability against Fairway View on Cedar Lodge's negligence and nuisance claims, we leave to the jury the determination of the appropriate remedies. On remand, the district court should determine whether sewage contaminants are currently being discharged onto Cedar Lodge's property. If so, injunctive relief may be appropriate.

Cedar Lodge's environmental expert, Suresh Sharma, testified that the pond needed to be drained for further testing of the pond bed, and Cedar Lodge argued that the defendants should be required to bear this cost. As to the evidence of the cost to drain the pond, we vacate the district court's grant of Fairway View's motion in limine excluding this evidence. The grant or denial of a motion in limine is reviewed for an abuse of discretion.[38] The district court

---

[36] *Rowell v. Carter Mobile Homes, Inc.*, 482 So. 2d 640, 645 (La. App. 1 Cir. 1984) (citing *Hunt v. Ford Motor Co.*, 341 So. 2d 614, 619 (La. App. 2 Cir. 1977)), *aff'd on other grounds*, 500 So. 2d 748 (La. 1987).

[37] *See Glisson v. Colonial Buick, Inc.*, 156 So. 2d 271, 272, 274-75 (La. App. 4 Cir. 1963) (affirming trial court's finding that defendant service and repair facility did not breach its duty because its mechanic performed the repairs that the plaintiff requested); *Rowell*, 482 So. 2d at 642-43, 645-46 (reasoning that repairman was negligent in failing to repair defective area of mobile home floor because his employer was authorized to perform "any necessary repairs").

[38] *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 643 (5th Cir. 2005) (citation omitted).

excluded evidence of the cost to drain the pond in light of its rulings disqualifying Sharma from testifying as an expert witness and dismissing Cedar Lodge's restoration claim.  Because we vacate the rulings on which the district court's decision was based, we vacate the grant of the motion in limine as to the cost-to-drain evidence and remand for reconsideration by the district judge.  On remand, if the jury finds liability for Fairway View, it is also to determine whether to award any damages for the cost of draining the pond.

However, as to Cedar Lodge's claim for damages for the lost business opportunity – the proposed development with Harvest Partners – we affirm the summary judgment in favor of Fairway View, although on different grounds than those relied upon by the district court. "We may affirm summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision."[39]  The district court granted summary judgment based on its finding that Witter unilaterally terminated the negotiations.[40]  We find, instead, that the likelihood that the proposed business deal would ultimately come together was speculative, making an award of lost business opportunity damages improper.

Under Louisiana law, damages for lost profits in tort actions are not recoverable where they are based on conjecture or speculation, but they must instead be proved with reasonable certainty – in other words, that they are "more probable than not."[41]

---

[39] *Century Sur. Co. v. Seidel*, 893 F.3d 328, 332 (5th Cir. 2018) (quoting *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003)).

[40] Because Witter was to retain an interest in the proposed development, it would appear that his belief that the property was contaminated gave him good reason to terminate the development negotiations.

[41] *Wasco, Inc. v. Econ. Dev. Unit, Inc.*, 461 So. 2d 1055, 1056-57 (La. App. 4 Cir. 1984) (citations omitted) (quoting *Al Smith's Plumbing & Heating Serv., Inc. v. River Crest, Inc.*, 365 So. 2d 1122 (La. App. 4 Cir. 1978)).

In cases where testimony showed negotiations were ongoing but no final contracts had been signed, Louisiana courts have found that "there was thus no reasonable certainty that th[e] project would have gone forward."[42]  For example, in *Fuller v. Barattini*, the testimony indicated that negotiations were ongoing for a television program "which may have resulted in a $100,000 profit," but no final contracts had been signed.[43]  The Louisiana Fifth Circuit Court of Appeal found that the "evidence was too speculative to establish [the lost profits claim] with reasonable certainty."[44]

Here, Cedar Lodge and Harvest Partners were still negotiating with respect to the proposed development.  Many of the details remained outstanding.  Neither Cedar Lodge nor Harvest Partners had agreed on the terms of the development deal, which were still being negotiated.  For example, the parties had not yet agreed upon the value of the property to be contributed by Cedar Lodge.  Also, no contribution agreement or letter of intent had been signed, no joint venture had been formed, and the application for HUD financing had not been made.  Because the negotiations could have fallen through at any of these (or other) stages, damages for the loss of this business opportunity are based upon speculation and are not recoverable.  Therefore, we affirm summary judgment in favor of Fairway View as to lost business opportunity damages.

---

[42] *Fuller v. Barattini*, 574 So. 2d 412, 416-17 (La. App. 5 Cir. 1991); *see also George W. Garig Transfer, Inc. v. Harris*, 75 So. 2d 28, 32-33 (La. 1954) (finding that plaintiff failed to prove with reasonable certainty "the actual amount of additional business it would have obtained" from the acquisition of a certificate authorizing the operation of common carrier motor freight service).

[43] *Fuller*, 574 So. 2d at 417.

[44] *Id.* at 416-17.

No. 17-30742

## V.  Conclusion

In summary and for these reasons, we VACATE the district court's summary judgment in favor of Fairway View on Cedar Lodge's negligence and nuisance claims.  We are also persuaded that issues of fact are presented on all of plaintiff's individual damage claims except for its claim for the lost business opportunity.  We AFFIRM the district court's grant of summary judgment and dismissal of STS.  We also VACATE the district court's ruling excluding Sharma's testimony, except with respect to TCLP testing.

We therefore VACATE, in part, and AFFIRM, in part, the judgment entered by the district court and REMAND the case for further proceedings consistent with this opinion.

AFFIRMED IN PART; VACATED and REMANDED IN PART.